## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JAMIE OBREGON ACOSTA, | ) | |
| INDIVIDUALLY AND ON BEHALF OF | ) | |
| OTHERS SIMILARLY SITUATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | |
| | ) | 1:22-CV-01209-TWT |
| SMART ALABAMA, LLC, AGWM | ) | |
| UNITED, LLC, TOTAL EMPLOYEE | ) | |
| SOLUTION SUPPORT, LLC, WK LAW | ) | |
| GROUP, PD; AND WOON KIM, | ) | |

## DEFENDANT AGWM UNITED, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DISMISSAL OF PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

**COMES NOW** Defendant, AGWM UNITED, LLC ("AGWM"), pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure, and hereby moves this Court to dismiss Count I of Plaintiff's Amended Class Action Complaint for failure to state a claim.

## BACKGROUND

Plaintiff brought this action against Defendant AGWM United, LLC ("AGWM") under the Racketeer Influenced and Corrupt Organizations Act

("RICO"). (ECF No. 18.) Plaintiff alleges that AGWM committed mail fraud, wire fraud, and fraud in foreign labor contracting. (*Id.*)

Plaintiff's claim arose from Plaintiff's employment with Defendant Smart Alabama, LLC. ("Smart") (*Id.*) Plaintiff argues AGWM served as Smart's agent for the purpose of recruiting. (*Id.*)

The crux of Plaintiff's argument is that Plaintiff, a Mexican national, alleges he participated in a scheme to misrepresent to officials in the U.S. Consulate Office in Mexico City, the type of job he had been offered to perform at SMART in order to secure a TN visa that would allow him to enter the United States,[1] and work at SMART at a previously agreed-upon salary, initially in a production job before being promoted based on his evaluation. (ECF No. 18 at ¶ 83.)  Plaintiff alleges that as a result of his alleged misrepresentations to the consulate officials, his ability to secure a green card in the future may be adversely impacted.  This is the basis of Plaintiff's RICO claim.[2]

---

[1] "A Mexican citizen applying for a TN visa must present documentation sufficient to satisfy the consular officer … including a brief summary of daily job duties …." (ECF No. 18 at ¶ 69.) "Once the applicant has provided the required evidence set forth in the preceding paragraph, the applicant is admitted under the TN visa classification …." (*Id.* at ¶ 71.)

[2] For purposes of a Rule 12(b)(6) motion, SMART must accept the material factual allegations of the complaint as true.  But these may not be the true facts.

As AGWM demonstrates below, all of Plaintiff's claim against AGWM should be dismissed.

**A.    Standard of Review.**

      1.    <u>Conclusory Allegations are Insufficient.</u>

RICO is a unique cause of action concerned with eradicating organized, long-term criminal activity. *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317-18 (4th Cir. 2010) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233, 239 (1989)). RICO penalties are "drastic" and courts "must … exercise caution to ensure that RICO's extraordinary remedies do not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value" *Id*. at 317 (citation omitted).

Defending speculative RICO actions imposes "devastating" costs. *Fuji Photo Film U.S.A., Inc. v McNulty*, 630 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) ("a RICO claim can exact a 'devastating' cost to defendant's reputation and finances"). Conclusory allegations, such as those presented here, fail to state actionable claims. *See, e.g.,*; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010); *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1236-37 (N.D. Ala. 2008). In immigration-related RICO claims when plaintiffs are permitted to proceed beyond a motion to dismiss, the conclusory alleged violations have been shown (after years of costly

litigation) to be unsupported by any facts.  *See, e.g., Hall v. Thomas*, 753 F. Supp. 2d 1113 (N.D. Ala. 2010); *Trollinger v. Tyson Foods, Inc.* 543 F. Supp. 2d 842 (E.D. Tenn. 2008).

2.     Rule 12(b)(6) Plausibility Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The court need not accept as true allegations in a complaint that are legal conclusions.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under *Iqbal*, the court first determines which allegations are legal conclusions which it will not assume are true.  *Iqbal*, 556 U.S. at 678; *Beck v. Fin. Tech. Corp.*, No. 7:16-cv-01845-LSC, 2017 WL 5668388, at *5 (N.D. Ala. Nov. 17, 2017).  The court then determines whether the remaining well-pleaded factual allegations which it assumes are true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Beck*, 2017 WL 5668388, at *5.

3.     Rule 9(b) Heightened Pleading Standard.

Because Plaintiff's RICO claim is premised on allegations of fraud, those allegations must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *Am. Dental Ass'n*, 605 F.3d at 1291; *Ambrosia Coal & Constr. Co. v. Pags Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("[c]ivil RICO claims, which are essentially a certain breed of fraud claims must be plead with an increased specificity").   Plaintiff must allege: (1) the precise statements, documents or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs and (4) what the defendants gained by the alleged fraud. *Am. Dental Ass'n*, 605 F.3d at 1291; *Ambrosia Coal*, 482 F.3d at 1216-17; *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (citation omitted) (plaintiff must allege "the 'who, what, when, where and how' of the alleged fraud).   When charging civil conspiracy to defraud against multiple defendants, it is necessary to plead with enough specificity to inform each defendant of the facts forming the basis of the conspiracy charge and therefore allegations must delineate among defendants as to their participation in or responsibilities for acts, which are the subject of the action. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316-19 (S.D. Fla. 2014).   "Rule 9(b) thus forces a plaintiff to 'offer more than mere

conjecture' and 'requires that a complaint plead facts giving rise to an inference of fraud.'" *Alhassid*, 60 F. Supp. 3d at 1316 (citation omitted); *Crawford Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (applying heightened Rule 9(b) standard to civil RICO claims), *Kharb v. Ericsson, Inc.,* No. 4:17-cv-619, 2018 WL 8369848 (E.D. Tex. Nov. 5, 2018) (Rule 9(b) standard applicable to claims of fraud in foreign labor contracting), *R. & R. adopted*, 2019 WL 1198399 (E.D. Tex. Mar. 14, 2019). Plaintiff needs to plausibly and particularly allege facts showing related instances of mail and wire fraud, but also plausibly allege facts showing a conspiracy created the alleged scheme. *Am. Dental Ass'n*, 605 F.3d at 1291.

### B.     In Pari Delicto Requires Dismissal of Plaintiff's RICO Claim.

Plaintiff alleges that he was offered a job at SMART that required he work on a production line for a year and then he would receive a promotion to an engineer position through his evaluations. (ECF No. 18 at ¶ 83.) Plaintiff then alleges he provided different information about his potential job with SMART to U.S. Consulate officials, (*id.* at ¶ 69 & ¶ 71), received a TN visa and was allowed to come to work at SMART. So to the extent there were any misrepresentations to a consular official, Plaintiff was an active and willing participant in doing so to his benefit. The equitable doctrine of *in pari delicto* applies to RICO claims. *Off. Comm. of*

*Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir. 2006).  "*[I]n pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Id*. at 1152 (citations omitted).  Its application depends on two factors: "the plaintiff's active participation in the violation *vel non* and (2) the policy goals of the federal statute." *Id*. at 1154.  As in *Edwards*, in this case both factors are present.  Plaintiff's allegations in his Complaint show he actively and willingly participated in the alleged scheme and his "recovery under RICO would not divest RICO violators of their ill-gotten gains: it would result in a wealth transfer among similarly situated conspirators." *Id*. at 1155.  So just as in *Edwards*, Plaintiff's RICO claim should be dismissed based on the application of the equitable doctrine of *in pari delicto*.

### C.    Plaintiff Fails to Establish the Requisite Statutory Standing to Bring a RICO Cause of Action Under 18 U.S.C. § 1962(c).

The Eleventh Circuit refers to § 1964 as a "statutory standing" requirement. *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1348-49 (11th Cir. 2016).  To bring a private cause of action under § 1962(c), a plaintiff must show he was "injured in his business or property by reason of a violation of section 1962." *Spirit Airlines,* 836 F.3d at 1349 (quoting 18 U.S.C. § 1964(c)).  Plaintiff must "plead facts sufficient to

give rise to a reasonable inference that the claimed racketeering … was the but-for <u>and</u> proximate cause of the plaintiffs' injuries." *Id*.

"There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause." *Spirit Airlines,* 836 F.3d at 1351. This standing requirement comes directly from Section 1964(c) of the RICO statute requiring plaintiffs establish (1) requisite injury to "business or property" and (2) that the injury was "by reason of" the predicate RICO violation. *Id.* at 1348 (citing 18 U.S.C § 1964(c)). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged;" a link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269-71, 274 (1992). Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708-09 (11th Cir. 2014); *Liquidation Comm'n of Banco Intercontinental*, *S.A. v. Renta*, 530 F.3d 1339, 1350 n.14 (11th Cir. 2008) (noting that "RICO standing is really just a heightened proximate causation standard, as it requires a claimant to prove that he was injured in his business or property 'by reason of' the RICO violation" (citing 18 U.S.C. § 1964(c)).

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. This central question originates from the "common-law foundations of the proximate-cause requirement, and specifically the 'demand for some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* at 457 (quoting *Holmes*, 503 U.S. at 268); *see also Simpson,* 744 F.3d at 708-09.  Plaintiff must plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity—alleged misrepresentation through mail and wire fraud and fraud in foreign labor contracting—was the but for and proximate cause of his alleged injuries.

Even if this Court were to construe Plaintiff's conclusory allegations of misrepresentation as supporting factual allegations, and *Iqbal* teaches that it should not, "[t]he mere fact of having been misled does not ineluctably give rise to a RICO cause of action unless the act of misleading the plaintiff actually caused him injury to his business or property that he would not otherwise have suffered."  *Spirit Airlines,* 836 F.3d at 1350.

Plaintiff's allegation that his future eligibility for a green card may be impacted at some unknown time in the future under some unknown circumstances is purely speculative. Plaintiff fails to plead any facts showing Defendants conduct

actually has affected his eligibility for a green card. This speculative claim is not a concrete injury sufficient to support a RICO claim.  *See Trollinger*, 543 F. Supp. 2d at 859.

If Plaintiff alleges that his wages were depressed due to the alleged racketeering activity, such claims have been rejected.

> Plaintiffs allege that the "hourly wages for the Class … are depressed below market levels (the going rate for unskilled labor in the area by employers which do not employ illegal workers)." Am. Compl. ¶ 73. Plaintiffs state no underlying data or figures to support assertion. The complaint states no facts addressing: (1) the wages of any class members; (2) the market wage of area employers who do not employ illegal workers (3) how the [p]laintiffs can purport to determine which area employers do or do not "employ illegal workers' for purposes of calculating market wages. Plaintiffs therefore cannot sustain a claim because they fail to "raise a right to relief above a speculative level."

*Walters v. McMahen*, 795 F. Supp. 2d 350, 357 (D. Md. 2011) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 684 F.3d 435 (4th Cir. 2012).

Similarly, Plaintiff's baseless pleading of wage underpayments, longer work hours, and lost employment opportunities does not enable him to avoid dismissal under *Twombly* and *Iqbal*.  Plaintiff provides no supporting facts regarding his wages; that he was paid a wage other than what he agreed to; that the market wage of similar employers in the area who do not engage in alleged illegal hiring practices differ, and if so, how that difference could conceivably impact him; or any other facts to support his allegations that he received "underpayment" or "lost employment

opportunities."  Nowhere in his complaint does Plaintiff explain how the alleged racketeering activity caused his wages to be depressed; how the alleged racketeering activity caused him to work longer hours; or how the alleged racketeering activity caused him to lose job opportunities.  Plaintiff's wages could have been affected by the wages other employers paid, the availability of workers in the area, the profitability of SMART's businesses, other factors that influence the labor market, and whether he could legally have worked at any other job or wage in the United States.  Thus, the conclusion that the alleged illegal hiring scheme was the but for cause of Plaintiff's alleged lower wages, long working hours or lost employment opportunities would require sheer speculation.[3] Ultimately, Plaintiff's lack of supporting allegations do not enable this Court "to draw reasonable inference" that direct injury of lost wages, longer working hours and employment opportunities resulted from the alleged racketeering activities.  *See e.g., Hall*, 753 F. Supp. 2d at 1155 ("failure to causally link any wage depression that may have occurred to the RICO predicate acts"); *Trollinger*, 543 F. Supp. 2d at 859 (failure to show direct injury between the alleged illegal hiring scheme and depressed wages).

---

[3]  And accepting the allegations of the Complaint as true, Plaintiff would not have been allowed to enter the United States and work at SMART but for the alleged scheme. Thus, he could not have been injured by the alleged racketeering activity as he otherwise would not have been allowed into the United States to work at SMART.

Plaintiff's Complaint fails to allege any direct link between the alleged racketeering activities and the harm suffered. Thus, Plaintiff's failure to establish statutory standing under § 1964 is fatal to his § 1962(c) claim.

**D.     Plaintiff Fails to Plead Sufficient Facts Establishing that AGWM Participated in the Activities of an Enterprise Through a Pattern of Racketeering Activity.**

A claim under Section 1962(c) requires proof that defendants: (1) conducted or participated in (2) the activities of an enterprise (3) through a pattern (4) of racketeering activity. *See e.g., Reves v. Ernst & Young*, 507 U.S. 177 (1993). "An act of racketeering is commonly referred to as a predicate act . . . [and] is shown when a racketeer commits at least two distinct but related predicate acts." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1280 (N.D. Ala. 2011) (citation omitted), *aff'd sub nom. Green v. Bissell Homecare Inc.,* 476 F. App'x 238 (11th Cir. 2012) (per curiam). In order to recover for an alleged RICO violation, Plaintiff must not only plead adequate facts supporting his Section 1962(c) RICO claim, but he also must plead the elements required to establish a violation of the alleged predicate acts. *See, e.g. Trollinger*, 543 F. Supp. 2d at 845. Dismissal befalls those who fail to "ground their RICO claims in specific predicate acts, as the law requires." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007). Plaintiff's RICO claim against AGWM is legally insufficient for a number of reasons.

1.      Plaintiff fails to sufficiently allege the existence of enterprise.

Under RICO, an "enterprise" is any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that Defendants AGWM, Woon Kim, SMART, and TESS constituted an association-in—fact enterprise. (ECF No. 18. ¶ 61.) Plaintiff also alleges that Defendants AGWM, Woon Kim, and SMART, Total Employee Solution Support, LLC ("TESS"), and Hyundai Motor America, Inc. "Hyundai" constituted an association-in-fact enterprise. (ECF No. 18. ¶ 60.) The Supreme Court has defined an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States,* 556 U.S. 938, 946, 129 S.Ct 2237, 173 L.Ed.2d 1265 (2009). Plaintiff alleges that this purported association-in-fact enterprise shared the common purpose to "recruit, contract, transport, and employ Mexican TN visa holders to SMART's business operation in Alabama." (ECF No. 18. ¶ 197.)

However, Plaintiff failed to explain how AGWM agreed to create and undertake the alleged fraudulent scheme. In other words, "Plaintiff[] do[es] not allege how Defendants agreed to employ any of these procedures as port of a long-term criminal enterprise predicated on acts of mail and wire fraud." *Am. Dental Ass'n,*

605 F.3d at 1292. With no further explanation, Plaintiff includes a conclusory allegation that "Defendants agreed to participate . . . in the fraudulent scheme." (ECF No. 18. ¶ 151.) Plaintiff's RICO claim is conclusory and fails for this reason alone.

2.     <u>Plaintiff Fails to Plead Facts Showing AGWM Participated in the Operation or Management of the Enterprise's Affairs</u>.

Plaintiff's allegations are insufficient to demonstrate that AGWM "participated in the operation or management" of the alleged Illegal Hiring Scheme, as required under RICO Section 1962(c). To satisfy the "conduct" requirement, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself and that the defendant played some part in directing the enterprise affairs. *Reves,* 507 U.S. at 179-83. Completely absent from Plaintiff's Complaint are any substantive facts that AGWM was involved in the management of the Illegal Hiring Scheme. AGWM is an agent of Smart for the purpose of recruiting (ECF No. 18 ¶ 57.), and Plaintiff's Complaint did not contain sufficient factual matters as to the reason AGWM is more than just an agent that relayed messages from SMART to Plaintiff. For example, the Complaint is devoid of any assertion as to whether AGWM played any role in making any decision in any of term and conditions of the Plaintiff's employment with Smart.

In his Complaint, Plaintiff asserted that Defendant AGWM "knew Defendant SMART would misrepresent to the United States . . ." and "knew and intentionally omitted the material fact that . . . someone entering the United States on a TN visa cannot have immigrant intent." (ECF No. 18 ¶ 85.) These are mere conclusory statements, and Plaintiff pled no detailed facts that support such allegations. Plaintiff alleged that AGWM used the false green card sponsorship promise to bait Plaintiff (ECF No. 18 ¶ 86,) but the Complaint is devoid of any allegation as to how AGWM knew SMART's alleged misrepresentation to the United States and SMART omitted the material facts.

In essence, Plaintiff's Complaint supports AGWM did NOT Participated in the Operation or Management of the Enterprise's Affairs. The person who interviewed Plaintiff was SMART Employee Relations Specialist Cynthia Rios and a Korean Assembly Department Manager. (ECF No. 18 ¶ 88,) and the Complaint is devoid of any facts whether AGWM's representative participated in the job interview. AGWM informed Plaintiff of him being selected for the position at SMART (ECF No. 18 ¶ 94,) but the job offer was signed by SMART's General Manager Gary Sport (ECF No. 18 ¶ 96,) further indicating AGWM is a mere messenger.  Plaintiff asserted that AGWM had SMART's express authority to make

the statement (ECF No. 18 ¶ 95), but having an authority to relay certain messages is hardly "participating in the operation or management."

Further, Plaintiff asserts that Defendant Woon Kim and Plaintiff had an attorney-client relationship. (ECF No. 18 ¶ 109.) Plaintiff had a good faith basis for relying on Defendant Woon Kim's advice. (ECF No. 18 ¶ 110.) The fact that Plaintiff had relied on his own legal counsel allows the Court to draw the reasonable inference that the Plaintiff's reliance on AGWM minimal, if at all, and AGWM is not liable for the misconduct alleged.

Plaintiff asserted that Defendant Woon Kim was acting as an agent for and with the express authority of SMART and AGWM (ECF No. 18 ¶ 108,) but the Complaint is devoid of any factual allegation that AGWM gave any kind of authority whatsoever to Defendant Woon Kim.

At best, Plaintiff alleges AGWM is an agent of Smart <u>knew</u> of the Illegal Hiring Scheme and that SMART offered employment to individuals recruited and hired through the scheme. *See Crichton v. Golden Rule Ins. Co*., 576 F.3d 392, 399 (7th Cir. 2009) ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice.") Absent any showing of management of the Illegal Hiring Scheme on the part of AGWM, Plaintiff's claim must fail.

3.     Plaintiff Fails to Adequately Plead a "Pattern" of Predicate Acts.

This Circuit has held that "a pattern of racketeering activity requires proof of something beyond the two predicate acts themselves.   That something is the threat of *continuing* of racketing activity" *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1265 (11th Cir. 2004) (citation omitted). The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address --one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future.  *Id.*  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *Id.* (citation omitted).

Here, Plaintiff provides no other supporting allegations that Defendants' conducted lasted longer than 9 months.  Aside from Plaintiff's conclusory allegations that "Defendants engaged in the racketeering activity described in this claim repeatedly in 2019 through the present," (ECF NO. 18 at ¶ 207), the specific incidents actually alleged began on January 20, 2020, when AGWM began recruiting Plaintiff to work at SMART, (*id.* at ¶ 78), and ended at the very latest, on October 2, 2020, when Plaintiff's TN Visa application was approved, (*id.* at ¶ 122). Even accepting Plaintiff's allegations as true, the predicate acts occurred within nine

months, which is too short a period to establish a "substantial period of time." *Jackson*, 372 F.3d 1266 ("While the plaintiffs are correct that no court has unequivocally declared a minimum period of time that can be considered 'substantial,' the great weight of authority suggests that nine months is a wholly insufficient interlude.").

Moreover, Plaintiff's Complaint alleges one overreaching fraudulent scheme to hire Plaintiff for employment at SMART.  Plaintiff's alleged racketing activity was related to the employment of Plaintiff, and there are no facts showing that Defendants' conduct went beyond the single act of employing Plaintiff.  *Jackson*, 372 F.3d at 1267 ("in cases… where the RICO allegations concern only a single scheme with a discrete goal, the court has refused to find a closed-ended pattern of racketeering").

Plaintiff asserted that Defendants "used the false green card sponsorship promise to bait Ms. Obregon and other Mexican engineers . . ." (ECF No. 18 ¶ 86), and AGWM sent similar emails to "dozens of Mexican engineers . . ." (Id. at ¶ 84.) Absent from the Complaint, are who the dozens of Mexican engineers are, when and how they were recruited specifically, and types of damages, if any, the dozens of Mexicans suffered. In view of the narrow scope of the alleged racketeering activity

and the period in which it is alleged to occur, Plaintiff cannot satisfy a "pattern" of racketeering activity with such conclusory statements.

 4.  Plaintiff Cannot Establish the Predicate Act of Fraud in Foreign
      Labor Contracting and Mail and Wire Fraud.

Plaintiff's racketeering claim relies on allegations of predicate acts of mail and wire fraud and violation of 18 U.S.C. § 1351 (fraud in foreign labor contracting). "The [predicate act] of fraud in foreign labor contracting occurs when someone: (1) recruits, solicits, or hires a person outside the United States, or causes another person to do so, or attempts to do so; (2) does so by means of materially false or fraudulent pretenses, representations or promises regarding that employment; and (3) acts knowingly and with intent to defraud." *United States v. Bart*, 888 F.3d 374, 378 (8th Cir.), *cert. denied*, 139 S. Ct. 266 (2018).  However, Plaintiff's claim must fail because he has not pled adequate facts showing AGWM made materially false or fraudulent misrepresentations to Plaintiff; and/or "caused" the Co-Conspirators to make materially false or fraudulent misrepresentations.

Here, AGWM relayed SMART's message to Plaintiff, stating "he would work on the production line for one year," "would receive a promotion to an engineer position through his evaluation" and "his wages would be $38,000 to $48,000 dollars." (ECF No. 18 at ¶ 83.)  Plaintiff alleges he later received an offer letter from Julian Kim on behalf of AGWM for the position of Quality Engineer at SMART and

stating his annual salary would be $38,000.00.  (*Id.* at ¶ 96.)  Plaintiff fails to show that the information provided to him was false, fraudulent or misleading, much less establishes that AGWM provided this information with the intent to defraud.

Plaintiff does not plead any facts indicating the payments he received while employed by SMART were different than the wages promised in his offer letter. Plaintiff also fails to identify the specific work duties he performed while employed and how those specific duties did not align with the description provided by Defendants.  Indeed, Plaintiff complains that he was required to work the assembly line as a production worker and asserts SMART made material misrepresentations to him because it knew "Mr. Obregon would work on the production line." (*Id.* at ¶ 116.) But Plaintiff alleges in his Complaint that Defendants informed him during the hiring process he would perform work on the production line.  (*Id.* at ¶ 83.) Plaintiff has failed to show any other false or fraudulent information Defendants provided to him.

Plaintiff also fails to allege any facts showing that AGWM "caused" SMART or WK Law Firm to provide materially false information.  Specifically, Plaintiff's Complaint is void of any allegations, including when, where, or who acting as an agent of SMART authorized or directed SMART or WK Law Firm to make material

misrepresentations to Plaintiff or anyone else, or otherwise "caused" SMART or WK Law Firm, P.C. to illegally recruit or hire Plaintiff as required under § 1351.

Next, Plaintiff attempts to establish a § 1351 claim by asserting that Defendants made material misrepresentations "in the TN Support Letter addressed to the Acting Nonimmigrant Visa Section of the United States Consulate" and that such misrepresentations included that "Mr. Obregon would be employed …as an Industrial Quality Engineer" and the job duties he would perform as a Quality Engineer.  (ECF No. 18 at ¶¶ 115-18.)  However, Plaintiff's claim must fail because he again fails to identify and plead with any specificity "misrepresentations" made by AGWM.  Plaintiff fails to explain why the information provided to the Consular General is false, fraudulent, or misleading, much less establish that Defendants provided such allegedly false information with the intent to defraud the government. Plaintiff fails to plead the job duties he actually performed while employed with Defendant and how those duties differed from the job duties provided to the consultant.   Plaintiff's conclusory allegations that SMART or AGWM made misrepresentation regarding the nature of the job duties performed without any supporting allegations is insufficient to meet the heightened Rule 9(b) standard. Likewise, Plaintiff has failed to provide sufficient allegations that Defendants

violated § 1351, and therefore, Plaintiff has failed to establish a requisite predicate act. For these reasons, Plaintiff's § 1962(c) claim should be dismissed.

**E.     The Complaint Fails to Allege any Facts from Which it Could Plausibly be Inferred that a Conspiracy Existed.**

18 U.S.C. § 1962(d) makes it illegal to conspire to violate § 1962(c). *Am. Dental Ass'n*, 605 F.3d at 1293-94. The failure to state a claim for a primary RICO violation under § 1962(c) causes the civil RICO conspiracy claim to necessarily fail. *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1153 (11th Cir. 2011) ("[s]ince we have already upheld the district court's dismissal of the RICO claims based on § 1962(c), the only substantive RICO provision that Douglas relies on, Douglas cannot prevail on a conspiracy claim"). Accordingly, Plaintiff's § 1962(d) claim must fail because, as discussed above, Plaintiff fails to establish a legally cognizable claim under § 1962(c).

Assuming arguendo, Plaintiff's § 1962(c) survives dismissal; Plaintiff's claim under § 1962(d) is still due to be dismissed. In order to state a claim under § 1962(d), Plaintiff must allege facts from which this Court can infer that there was an agreement involving each defendant to commit at least two predicate acts. *Hecht v. Comm. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). Plaintiff must allege "that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise," that

"each co-conspirator knew the conspiracy's goals and agreed to facilitate them." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs*., *P.C.*, No. 04 CV 5045, 2008 WL 4146190, at *14 (E.D.N.Y. Sept. 5, 2008) (citation omitted).  Plaintiff must also allege that Defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co*., 187 F.3d 229, 244 (2d Cir. 1999); *see also Foster v. Wintergreen Real Estate Co*., No. 3:08cv00031, 2008 WL 4829674, at * 9 (W.D. Va. Nov. 6, 2008) (the elements of a conspiratorial RICO claim required: "(1) knowledge of the general nature of the conspiracy; (2) agreement by the defendant: (a) to personally commit a violation of sections 1962(a)–(c); (b) to aid and abet a violation; or (c) that another conspirator commit a violation; and (3) injury caused by an act in furtherance of the conspiracy"), *aff'd,* 363 F. App'x 269 (4th Cir. 2010).

A complaint alleging conspirator agreement must do more than state mere conclusions of the existence of a conspiracy. Specific factual allegations showing the time and place of conspiracy and the connection of the defendant to the injury are essential in such instances to state a cause of action.  *Am. Dental Ass'n*, 605 F.3d at 1291 ("Therefore, not only did Plaintiffs need to plausibly and particularly allege facts showing related instances of mail and wire fraud, but also plausibly allege facts

23

showing that a conspiracy created the alleged scheme.")  Bald allegations that the defendants conspired to violate certain statutes, without more specific factual allegations showing the conspiracy and how it violated the plaintiff's rights, simply are not sufficient.  *Sigler v. LeVan*, 485 F. Supp. 185, 196 (D. Md. 1980).  "The plaintiff must allege facts with respect to each defendant's participation in the fraud." *Am. Dental Ass'n,* 605 F.3d at 1292.

In this case, Plaintiff alleges, in an entirely conclusory manner, that AGWM "participated" in the Illegal Hiring Scheme.  Yet, Plaintiff fails to plead factual averments showing AGWM formed a conspiratorial agreement, knowingly joined a conspiracy to commit predicate acts or directed any of the alleged Co-conspirators to engage in any of the alleged predicate acts.

Plaintiff alleges "Defendant AGWM is Defendant SMART's agent for the purpose of recruiting and hiring TN visa holders from Mexico."  (ECF No. 18 at ¶ 57.)  However, this is not a predicate act and is legal activity.  Plaintiff does not assert any factual bases showing SMART agreed to recruit or hire TN Visa holders unlawfully or that SMART directed Co-Conspirators to otherwise recruit and hire TN visa holders unlawfully.  More specifically, the Complaint is devoid of any allegations as to when, where and how any particular agent of SMART agreed to commit the illegal hiring scheme or otherwise directed AGWM to conduct the illegal

hiring scheme. The Complaint is devoid of any allegations as to who at AGWM knew of the illegal hiring scheme, approved of it or otherwise instructed that such hiring be done in a fashion that was unlawful.

That AGWM and SMART agreed that AGWM would assist SMART in recruiting and hiring alone does not support that the parties agreed to commit federal crimes. Plaintiff's allegations are nothing more than "formulaic recitations" of conspiracy, which the Supreme Court plainly has held as insufficient." *See Twombly*, 550 U.S. at 557 (nothing that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Plaintiff's unsupported allegations fail to satisfy the Rule 9(b) standard or even the lower standard of Rule 8.

Plaintiff attempts to rely on allegations concerning AGWM's actions to suggest he adequately alleged a conspiratorial agreement with SMART. But, Plaintiff's claim again fails to show any agreement or knowledge on the part of AGWM.

Specifically, Plaintiff alleges that Ms. Kim, as agent of AGWM, "knew Defendant SMART would misrepresent to the United States government that Mr. Obregon would be employed as an Industrial Quality Engineer, rather than a production line worker;" "the job offer attached to Ms. Kim's September 15, 2020

email offered Mr. Obregon a position as a Quality engineer at SMART;" and "at the time AGWM and SMART representatives sent the job offer … to Mr. Obregon the AGWM and SMART representatives knew Mr. Obregon would not work as a Quality Engineer at SMART."  (ECF No. 18 at ¶¶ 85 & 96).  Plaintiff asserts several conclusory allegations of knowledge and fails to provide any factual support indicative of a conspiratorial agreement.  There are no allegations showing who at AGWM agreed to, knew of, or approved the alleged Illegal Hiring Scheme.

Plaintiff's reliance on allegations asserted against Co-Conspirator WK Law Firm to support his conspiracy claim are meritless.  Plaintiff alleges that Ellie Kim, employee of WK Law Group "acting as an agent of SMART and AGWM … knew SMART and AGWM had informed Mr. Obregon he would be sponsored for a green card after working at SMART for 18 months; Mr. Obregon would not work at SMART as an Industrial Qualify Engineer but rather would work on the production line as an assembly worker; and any misrepresentations made to the U.S. Government likely would make Mr. Obregon ineligible for a green card."  (ECF No. 18 at ¶ 111.)  Plaintiff's claim fails for the same reasons presented above—failure to provide any factual support indicative of a conspiratorial agreement.

Ultimately, Plaintiff's Complaint does nothing more than assert that Defendants agreed to recruit Mexican citizens to work for SMART through the

lawful TN Visa program authorized by the United States government and that such alleged Co-Conspirators "acting as agents of SMART" had knowledge that SMART wished to recruit and hire Mexican citizens through the TN program. As the Eleventh Circuit recognized *in American Dental Ass'n v. CIGNA ..*, the Supreme Court's current review standard under 12(b)(6) requires courts to "infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer. *Am. Dental Ass'n*, 605 F.3d at 1290 (citing *Iqbal*, 556 U.S. at 681-82 and *Twombly*, 550 U.S. at 567). Absent conclusory allegations of direction, knowledge and control of the predicate acts, Plaintiff's claim of a racketing conspiracy fails.

### F. Conclusion.

For the reasons stated above, Plaintiff fails to state a claim against AGWM upon which relief can be granted. As a result, Count I of Plaintiff's Amended Class Action Complaint should be dismissed with prejudice.

By: */s/ Brian G. Kim*
Brian G. Kim
Georgia. Bar No. 479330

1814 Satellite Blvd Suite 403
Duluth, GA 30097
Telephone: (678) 878-4200
Facsimile: (678) 878-4208

Email: Brian@briankimpc.com
Attorneys for Defendant AGWM United, LLC.

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing AGWM UNITED, LLC's Memorandum

of Law In Support ITS MOTION FOR DISMISSAL OF PLAINTIFF'S FIRST

AMENDED CLASS ACTION COMPLAINT has been prepared with Times New

Roman, 14-point font, one of the font and point selections approved by the Court

in LR 5.1C.

By: */s/ Brian G. Kim*
Brian G. Kim
Georgia. Bar No. 479330

1814 Satellite Blvd Suite 403
Duluth, GA 30097
Telephone: (678) 878-4200
Facsimile: (678) 878-4208
Email: Brian@briankimpc.com
Attorneys for Defendant AGWM United, LLC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing via CM/ECF, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, on this the 19th day of September, 2022:

Daniel Werner
James E. Radford
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
Attorneys for Plaintiff

Jon M. Gumbel
Burr & Forman, LLP
171 17th Street, NW
Suite #1100
Atlanta, GA 30363
Attorney for Smart Alabama, LLC

David Kresser
Fisher & Phillips, LLP
1075 Peachtree St., NE, Suite 3500
Atlanta, GA 30309
Attorney for Total Employee Solution Support, LLC

Betsy Bulat
Martenson, Hasbrouck & Simon, LLP
2573 Apple Valley Road NE
Atlanta, GA 30319
Attorney for Woon Kim & WK Law Group, PC

By: _/s/ Brian G. Kim_
Brian G. Kim

Georgia. Bar No. 479330

1814 Satellite Blvd Suite 403
Duluth, GA 30097
Telephone: (678) 878-4200
Facsimile: (678) 878-4208
Email: Brian@briankimpc.com
Attorneys for Defendant AGWM United, LLC.