**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMIE OBREGON ACOSTA, Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SMART ALABAMA, LLC; AND AGWM UNITED, LLC; TOTAL EMPLOYEE SOLUTION SUPPORT, LLC; WK LAW GROUP, PC; AND WOON KIM, | ) ) ) ) ) | CIVIL ACTION FILE NO.:<br><br>1:22-CV-01209-TWT |
| Defendants. | ) ) ) ) | |

**DEFENDANT SMART ALABAMA, LLC'S (SMART) MEMORANDUM**
**OF LAW IN SUPPORT OF ITS MOTION FOR DISMISSAL OF PLAINTIFF'S**
**FIRST AMENDED CLASS COMPLAINT ("FAC")**

Plaintiff, a Mexican national, alleges he actively participated in a scheme to

misrepresent to U.S. Officials in the Mexico City Consulate Office, the type of job

he had been offered to perform at SMART, in order to secure a TN visa that

allowed him to enter the United States,[1] and work at SMART at a previously

---

[1] "A Mexican citizen applying for a TN visa must present documentation sufficient to satisfy the consular officer … including a brief summary of daily job duties …." (ECF No. 18 at ¶ 69.) "Once the applicant has provided the required

1

agreed-upon salary, initially in a production job before being promoted based on his evaluation. (ECF No. 18 at ¶¶ 78-120.)  Plaintiff claims that as a result of his alleged misrepresentations, his ability to secure a green card in the future may be adversely impacted, (*id.* at ¶ 140), he was denied a TN and B1/B2 visa, (*id.* at ¶¶ 134, 139), he lost his initial investment in a vehicle, (*id.* at ¶ 144), and he lost other undefined wages and employment opportunities, (*id.* at ¶¶ 145, 147, 215.) This is the basis of Plaintiff's RICO claim in Count I of his FAC.[2]

In Counts II and III, Plaintiff asserts against SMART employment discrimination claims under § 1981 and Title VII.  (ECF No. 18 at 50-53.)  In Count IV, Plaintiff asserts against SMART violations of the Fair Labor Standards Act.  (*Id.* at 54-55.)  Count V is a state law claim for legal malpractice against Defendants Woon Kim and WK Law Group, LLC only.  (*Id.* at 55-56.)  As SMART demonstrates below, all of Plaintiff's clams as to SMART should be dismissed.

---

evidence set forth in the preceding paragraph, the applicant is admitted under the TN visa classification …." (*Id.* at ¶ 71.)

[2] For purposes of a Rule 12(b)(6) motion, SMART must accept the material factual allegations of the complaint as true.  But these may not be the true facts.

2

A.      **Standard of Review.**

      1.      <u>Conclusory Allegations are Insufficient.</u>

RICO is a unique cause of action concerned with eradicating organized, long-term criminal activity.  *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317-18 (4th Cir. 2010) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233, 239 (1989)).  RICO penalties are "drastic" and courts "must … exercise caution to ensure that RICO's extraordinary remedies do not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value"  *Id*. at 317 (citation omitted).

Defending speculative RICO actions imposes "devastating" costs.  *Fuji Photo Film U.S.A., Inc. v McNulty*, 640 F. Supp. 2d 300, 308-09 (S.D.N.Y. 2009) (a RICO claim can exact a "devastating" cost to defendant's reputation and finances).  Conclusory allegations, such as those presented here, fail to state actionable claims.  *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010); *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1236-37 (N.D. Ala. 2008).   In immigration-related RICO claims when plaintiffs were permitted to proceed beyond a motion to dismiss, the conclusory alleged violations have been shown (after years of costly litigation) to be unsupported by any facts.  *See, e.g., Hall v.*

*Thomas*, 753 F. Supp. 2d 1113 (N.D. Ala. 2010); *Trollinger v. Tyson Foods, Inc.* 543 F. Supp. 2d 842 (E.D. Tenn. 2008).

2.      Rule 12(b)(6) Plausibility Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The court need not accept as true allegations that are legal conclusions.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under *Iqbal*, the court first determines which allegations are legal conclusions which it will not assume are true.  *Iqbal*, 556 U.S. at 678; *Beck v. Fin. Tech. Corp.*, No. 7:16-cv-01845-LSC, 2017 WL 5668388, at *5 (N.D. Ala. Nov. 27, 2017).  The court then determines whether the remaining well-pleaded factual allegations which it assumes are true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Beck*, 2017 WL 5668388, at *5.  When charging civil conspiracy to defraud against multiple defendants, it is necessary to plead with

4

enough specificity to inform each defendant of the facts forming the basis of the conspiracy charge and therefore allegations must delineate among defendants as to their participation in or responsibilities for acts, which are the subject of the action. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316-19 (S.D. Fla. 2014).

### 3.   Rule 9(b) Heightened Pleading Standard.

Because Plaintiff's RICO claim is premised on allegations of fraud, those allegations must satisfy the heightened pleading requirement of Fed. R. Civ. Proc. 9(b). *Am. Dental Ass'n*, 605 F.3d at 1291; *Ambrosia Coal & Constr. Co. v. Pags Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("[c]ivil RICO claims, which are essentially a certain breed of fraud claims must be plead with an increased specificity"). Plaintiff must allege: (1) the precise statements, documents or misrepresentations made; (2) the time, place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs and (4) what the defendants gained by the alleged fraud. *Am. Dental Ass'n*, 605 F.3d at 1291; *Ambrosia Coal*, 482 F.3d at 1216-17; *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (citation omitted) (plaintiff must allege "the 'who, what, when, where and how' of the alleged fraud"). "Rule 9(b) thus forces a plaintiff to 'offer more than mere conjecture' and 'requires that a complaint plead facts giving rise to an inference of fraud.'" *Alhassid*,

60 F. Supp. 3d at 1316 (citation omitted); *Crawford Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (applying heightened Rule 9(b) standard to civil RICO claims); *Kharb v. Ericsson, Inc.*, No. 4:17-cv-619, 2018 WL 8369848 (E.D. Tex. Nov. 5, 2018) (Rule 9(b) standard applicable to claims of fraud in foreign labor contracting); *R. & R. adopted*, 2019 WL 1198399 (E.D. Tex. Mar. 14, 2019).  Plaintiff needs to plausibly and particularly allege facts showing related instances of mail and wire fraud, but also plausibly allege facts showing a conspiracy created the alleged scheme.  *Am. Dental Ass'n*, 605 F.3d at 1291.

### B.      In Pari Delicto Requires Dismissal of Plaintiff's RICO Claim.

Critical to Plaintiff's allegation of a racketeering enterprise that recruited Mexican engineers to work at SMART are alleged misrepresentation to the U.S. Consulate Office.  Without those alleged misrepresentations there would be no TN visas for Plaintiff or others  and correspondingly no racketeering enterprise.  But it is Plaintiff who knowingly made these alleged misrepresentations.[3]  And as a result, Plaintiff received a TN visa and came to work at SMART.  Plaintiff was no

---

[3]   "A Mexican citizen applying for a TN visa must present documentation …." (ECF No. 18 at ¶ 69); *see* 8 C.F.R. § 214.6(d)(3)(ii). Plaintiff knew he would work on the production line. (ECF No. 18 at ¶ 83c.)

innocent bystander, he was an active and willing participant in the alleged scheme.[4]

The Eleventh Circuit makes clear that the  equitable doctrine of *in pari delicto* applies to RICO claims.  *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir. 2006).  "*[I]n pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'"  *Id*. at 1152 (citations omitted).  Its application depends on two factors: "(1) the plaintiffs' active participation in the violation *vel non* and (2) the policy goals of the federal statute." *Id*. at 1154.  Here, both factors are present.  First, Plaintiff's FAC alleges Plaintiff actively made representations to the Consulate Office (ECF No. 18 at ¶ 69 ("must present"), ¶ 71 ("applicant has provided")) that he knew were false, (*id*. at ¶ 83c), and without which there would be no TN visa, no scheme and no alleged racketeering enterprise.  Plaintiff was no passive participant: "Because federal RICO violations, as a matter of law, require affirmative wrongdoing rather than passive acquiescence" *in pari delicto* is applicable "in the RICO context." *Edwards*, 437 F.3d at 1155-56 (citation omitted).  Second, *Edwards* makes clear that allowing Plaintiff a "recovery under RICO would

---

[4]  Plaintiff tacitly admits his active participation in the alleged scheme. (*See* ECF No. 18 at ¶ 129.)

not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators." *Id*. at 1155. "[T]he defense of *in pari delicto* furthers the policy of the federal RICO statute." *Id*. at 1156. Just as in *Edwards*, Plaintiff's RICO claim must be dismissed based on the equitable doctrine of *in pari delicto*.

### C. Plaintiff Fails to Establish the Requisite Statutory Standing to Bring a RICO Cause of Action Under 18 U.S.C. § 1962(c).

The Eleventh Circuit refers to Section 1964 as a "statutory standing" requirement. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348-49 (11th Cir. 2016). To bring a private cause of action under § 1962(c), a plaintiff must show he was "injured in his business or property <u>by reason of</u> a violation of section 1962." *Id*. at 1349 (quoting 18 U.S.C. § 1964(c)). Plaintiff must "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering … was the but-for <u>and</u> proximate cause of the plaintiffs' injuries." *Id*.

"There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause." *Spirit Airlines,* 836 F.3d at 1351. This standing requirement comes directly from Section 1964(c) of the RICO statute requiring plaintiffs establish (1) requisite injury to "business or property" and (2) that the injury was "by reason of" the predicate RICO violation. *Id*. at 1348 (citing 18 U.S.C § 1964(c)). Proximate cause

8

requires "some direct relation between the injury asserted and the injurious conduct alleged;" a link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269-71, 274 (1992). Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708-09 (11th Cir. 2014); *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1350 n.14 (11th Cir. 2008) (noting that "RICO standing is really just a heightened proximate causation standard, as it requires a claimant to prove that he was injured in his business or property 'by reason of' the RICO violation" (citing 18 U.S.C. § 1964(c))).

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. This central question originates from the "common-law foundations of the proximate-cause requirement, and specifically the 'demand for some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* at 457 (quoting *Holmes*, 503 U.S. at 268); *see also Simpson*, 744 F.3d at 708-09. Plaintiff must plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity—alleged misrepresentation through mail

and wire fraud and fraud in foreign labor contracting—was the but for and proximate cause of his alleged injuries.

Even if this Court were to construe Plaintiff's conclusory allegations of misrepresentation as supporting factual allegations, and *Iqbal* teaches that it should not, "[t]he mere fact of having been misled does not ineluctably give rise to a RICO cause of action unless the act of misleading the plaintiff actually caused him injury to his business or property that he would not otherwise have suffered." *Spirit Airlines,* 836 F.3d at 1350.

Plaintiff does not allege any facts supporting such an injury.  Rather, Plaintiff summarily asserts that the alleged illegal hiring scheme caused Plaintiff difficulty in securing subsequent U.S. work visas and caused Plaintiff to suffer wage underpayments, lost employment opportunities, and/or losses to real or personal property. (ECF No. 18 at ¶¶ 141, 145.)

Plaintiff's allegation that "[b]ut for Defendants' misconduct, Plaintiff would not have been denied the TN and B1/B2 visas," (*id*. at ¶ 141), must fail as a matter of law. Plaintiff states in his FAC that the U.S. Government denied his visa application "specifically because of the misrepresentations about the nature of the work Mr. Obregon would perform at SMART." (*Id*. at ¶ 134.)  But these are alleged

misrepresentations made by Plaintiff. (*Id.* at ¶¶ 69, 83c.)  Plaintiff's application was denied because of his own conduct, not but-for the Defendants' conduct.

Further, the decision to admit or exclude an alien from the United States is within the plenary power of Congress.  *Kleindienst v. Mandel*, 408 U.S. 753, 765-66 (1972).  Plaintiff, an alien, non-citizen has and had no right to admission to the United States and certainly no property right to be so admitted.  *Azizi v. Thornburg*, 908 F.2d 1130, 1134 (2d Cir. 1990) (an alien does not have an "inherent property right to an immigrant visa"); *De Avilla v. Civiletti*, 643 F.2d 471, 477 (7th Cir. 1981) (there is "no vested right in the issuance of a visa").  The alleged misrepresentation that supposedly caused and may cause Plaintiff denial of entry into the United States did not injure him in his property, because he had no such property right.

Finally, Plaintiff fails to identify the precise document or statements made, or any facts showing that Plaintiff is not merely speculating that his application was denied based on the alleged misrepresentations, as the heightened pleading standard requires. Plaintiff's visas could have been denied, for example, due to the increased demand for visas, failure to meet other application requirements, and issues with the employers from whom Plaintiff sought visas. Plaintiff's speculation as to the reasons his subsequent visas were denied is not a concrete injury sufficient to support a RICO claim.  *See Trollinger*, 543 F. Supp. 2d at 859.

Plaintiff's allegations that his wages were depressed due to the alleged racketeering activity also lack any merit.

> Plaintiffs allege that the "hourly wages for the Class … are depressed below market levels (the going rate for unskilled labor in the area by employers which do not employ illegal workers)." Am. Compl. ¶ 73. Plaintiffs state no underlying data or figures to support assertion. The complaint states no facts addressing: (1) the wages of any class members; (2) the market wage of area employers who do not employ illegal workers (3) how the [p]laintiffs can purport to determine which area employers do or do not "employ illegal workers" for purposes of calculating market wages. Plaintiffs therefore cannot sustain a claim because they fail to "raise a right to relief above a speculative level."

*Walters v. McMahen*, 795 F. Supp. 2d 350, 357 (D. Md. 2011) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 684 F.3d 435 (4th Cir. 2012).

Similarly, Plaintiff's baseless pleading of wage underpayments, longer work hours, and lost employment opportunities does not enable him to avoid dismissal under *Twombly* and *Iqbal*. Plaintiff provides no supporting facts that he was paid a wage other than what he agreed to; that the market wage of similar employers in the area who do not engage in alleged illegal hiring practices differ, and if so, how that difference could conceivably impact him; how his situation compares to the situation he would have been in if he remained in Mexico in the absence of the alleged scheme; or any other facts to support his allegations that he received "underpayment" or "lost employment opportunities." Nowhere in his complaint

does Plaintiff explain how the alleged racketeering activity caused his wages to be depressed; how the alleged racketeering activity caused him to work longer hours; or how the alleged racketeering activity caused him to lose job opportunities. Plaintiff's wages could have been affected by the wages other employers paid, the availability of workers in the area, the profitability of SMART's businesses, other factors that influence the labor market, and whether he could legally have worked at any other job or wage in the United States.  Thus, the conclusion that the alleged illegal hiring scheme was the but for cause of Plaintiff's alleged lower wages, long working hours or lost employment opportunities would require sheer speculation.[5] Ultimately, Plaintiff's lack of supporting allegations do not enable this Court "to draw reasonable inference" that direct injury of lost wages, longer working hours and employment opportunities resulted from the alleged racketeering activities.  *See e.g., Hall*, 753 F. Supp. 2d at 1155 ("failure to causally link any wage depression that may have occurred to the RICO predicate acts"); *Trollinger*, 543 F. Supp. 2d at 859 (failure to show direct injury between the alleged

---

[5] And accepting the allegations of the Amended Complaint as true, Plaintiff would not have been allowed to enter the United States and work at SMART but for the alleged scheme. Thus, he could not have been injured by the alleged racketeering activity as he otherwise would not have been allowed into the United States to work at SMART at any wage or under any conditions.

illegal hiring scheme and depressed wages).[6]   Plaintiff does not and cannot establish statutory standing under § 1964 due to his failure to allege any direct link between the alleged racketeering activities and the alleged harm suffered.

### D. Plaintiff Fails to Plead Sufficient Facts Establishing that SMART Participated in the Activities of an Enterprise Through a Pattern of Racketeering Activity.

A claim under Section 1962(c) requires proof that defendants: (1) conducted or participated in (2) the activities of an enterprise (3) through a pattern (4) of racketeering activity. *See e.g., Reves v. Ernst & Young*, 507 U.S. 177 (1993). "An act of racketeering is commonly referred to as a predicate act . . . [and] is shown when a racketeer commits at least two distinct but related predicate acts." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1280 (N.D. Ala. 2011) (citation omitted), *aff'd sub nom. Green v. Bissell Homecare Inc.*, 476 F. App'x 238 (11th Cir. 2012) (per curiam). In order to recover for an alleged RICO violation, Plaintiff must not only plead adequate facts supporting his Section 1962(c) RICO claim, but he also must plead the elements required to establish a violation of the alleged predicate acts.

---

[6] Plaintiff's allegations that but for his conduct in making the alleged misrepresentations he could have at some point in the future lawfully entered the United States and made more money fails because the alleged misrepresentations were his conduct and such a claim is completely speculative. Likewise, Plaintiff alleges no proximate connection between the alleged RICO violations and the repossession of his car.

48644293 v1

*See, e.g. Trollinger*, 543 F. Supp. 2d at 845.  Dismissal befalls those who fail to "ground their RICO claims in specific predicate acts, as the law requires."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007).

       1.     <u>Plaintiff Fails to Plead Facts Showing SMART Participated in the Operation or Management of the Enterprise's Affairs</u>.

Plaintiff's allegations are insufficient to demonstrate that SMART "participated in the operation or management" of the alleged illegal hiring scheme, as required under RICO Section 1962(c).  To satisfy the "conduct" requirement, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself and that the defendant played some part in directing the enterprise affairs.  *Reves,* 507 U.S. at 179-83.  Plaintiff's conclusory allegations that "Defendants participated in the operation or management of the RICO enterprise" is insufficient to establish this requirement. (ECF No. 18 at ¶ 76.) Completely absent from Plaintiff's FAC are any substantive facts that SMART was involved in the management of the illegal hiring scheme.  At best, Plaintiff alleges SMART <u>knew</u> of the illegal hiring scheme and that SMART offered employment to individuals recruited and hired through the scheme.  *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice.") Absent any showing of

management of the illegal hiring scheme on the part of SMART, Plaintiff's claim must fail.

        2.    <u>Plaintiff Fails to Adequately Plead a "Pattern" of Predicate Acts</u>.

This Circuit has held that "a pattern of racketeering activity requires proof of something beyond the two predicate acts themselves.  That something is the threat of *continuing* of racketeering activity" *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1265 (11th Cir. 2004) (citation omitted). The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address --one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future.  *Id.*  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *Id.* (citation omitted).

Here, Plaintiff provides no other supporting allegations that Defendants' conduct lasted longer than 9 months.  Aside from Plaintiff's conclusory allegation that "Defendants engaged in the racketeering activity described in this claim repeatedly in 2019 through the present," (ECF No. 18 at ¶ 207), the specific incidents actually alleged began in January 2020, when AGWM began recruiting

16

Plaintiff to work at SMART, (*id.* at ¶ 78), and ended at the very latest, on October 2, 2020, when Plaintiff's TN Visa application was approved, (*id.* at ¶ 122). Even accepting Plaintiff's allegations as true, the predicate acts occurred within nine months, which is too short a period to establish a "substantial period of time." *Jackson*, 372 F.3d 1266 ("While the plaintiffs are correct that no court has unequivocally declared a minimum period of time that can be considered 'substantial,' the great weight of authority suggests that nine months is a wholly insufficient interlude.").

Moreover, Plaintiff's FAC alleges one overreaching fraudulent scheme to hire Plaintiff for employment at SMART. No facts are alleged showing that Defendants' conduct went beyond the single act of employing Plaintiff. *Jackson*, 372 F.3d at 1267 ("in cases … where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering"). Plaintiff fails to identify other individuals recruited by the alleged hiring scheme, the manner in which they were recruited, the precise statements made to the other individuals, how those statements were misrepresentations or any facts showing these individuals were recruited in a similar manner to Plaintiff. Ultimately, Plaintiff has failed to meet the heightened Rule 9 standard which requires Plaintiff show (1) the precise statements,

17

documents or misrepresentations made; (2) the time, place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs and (4) what the defendants gained by the alleged fraud as to any other individual besides Plaintiff. As plead, Plaintiff at most shows a singular, isolated incident to recruit Plaintiff to work for SMART occurred and he has failed to show a threat of continuing racketeering activity. In view of the narrow scope of the alleged racketeering activity and the period in which it is alleged to occur, Plaintiff cannot satisfy a "pattern" of racketeering activity.

### 3. Plaintiff Cannot Establish the Underlying Predicate Acts of his RICO Claim.

In order to establish the necessary element of "racketeering activity" under Plaintiff's RICO claim, Plaintiff must allege Defendants engaged in at least two predicate acts. *Boyd*, 230 F. Supp. 3d at 1280. As discussed more fully below, to the extent this Court finds that Plaintiff fails to plead adequately either his mail and wire fraud claim or fraud in foreign labor contracting claim, Plaintiff's RICO claim must fail.

#### a. *Plaintiff cannot establish the predicate act of mail and wire fraud.*

To be convicted of mail or wire fraud, a person must "(1) intentionally participate[] in a scheme or artifice to defraud another of money or property and

(2) use[] or 'cause[]' the use of the mail or wires for the purpose of executing the scheme or artifice." *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022) (quoting *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011)).  Pursuant to Eleventh Circuit precedent, there is an important distinction between deceiving and defrauding, with only the later giving rise to liability for wire and mail fraud. *United States v. Takhalov*, 827 F.3d 1307, 1312 (11th Cir. 2016). Defrauding requires that the deceit be "about the nature of the bargain" and "requires an intent to harm." *Id.* at 1313. The Eleventh Circuit illustrates this distinction as follows:

> Consider the following two scenarios. In the first, a man wants to exchange a dollar into four quarters without going to the bank.  He calls his neighbor on his cell phone and says that his child is very ill.  His neighbor runs over and when she arrives, he asks her to make change for him.  She agrees; the quarters pass to the man; the dollar passes to the women; and they part ways.  She later learns that the child was just fine all along.  The second scenario is identical to the first except that instead of giving the women a true dollar, he gives her a counterfeit one.

> The first scenario is not wire fraud; the second one is.  Although the transaction would not have occurred–but for the lie in the first scenario … the man nevertheless did not intend to 'depriv[e] [the woman] of something of value by trick, deceit [and so on]."

*Id.* (footnote omitted) (quoting *Bradley*, 644 F.3d at 1240). Here, Plaintiff's claims of mail and wire fraud must fail because (1) he fails to allege any misrepresentations made to him; and (2) he fails to allege that any misrepresentations rise to the level of "a scheme or artifice to defraud another of money or property."

First, Plaintiff claims that SMART, <u>through AGWM</u>, informed Plaintiff "he would work on the production line for one year and receive a promotion to an engineer positon through his evaluation,"[7] "his employment would be for a period of one year, with the ability to extend this period," "he would be sponsored for a green card after 18 months," and "his wages would be $38,000 to $48,000 dollars." (ECF No. 18 at ¶ 83.)  Plaintiff alleges he later received an offer letter from Julian Kim "on behalf of AGWM" for the position of Quality Engineer at SMART and stating his annual salary would be $38,000.00.  (*Id.* at ¶¶ 94, 96.)  Plaintiff fails to show that the information provided to him was false, fraudulent or otherwise misleading. Plaintiff does not plead any facts indicating the payments he received while employed by SMART were different from the wages promised in his offer letter.  Indeed, Plaintiff complains that he was required to work the assembly line as a production worker and asserts SMART made material misrepresentations to him because it knew "Mr. Obregon … would work as production line workers." (*Id.* at ¶ 98.)  But Plaintiff alleges in his FAC that Defendants informed him during the hiring process he would perform work on the production line.  (*Id.* at ¶ 83c.) Plaintiff also fails to allege that he was employed longer than 18 months entitling

---

[7] "[An] applicant is admitted under the TN visa classification for a period of up to three years." (ECF No. 18 at ¶ 71 (citing 8 C.F.R. § 214.6(e)).)

48644293 v1

him to sponsorship of green card. Plaintiff fails to show any other misrepresentations, false or fraudulent information Defendants provided to him.

Moreover, Plaintiff fails to show that he did not receive what he bargained for and that any of the remaining alleged misrepresentations went to the nature of the bargain. Plaintiff alleges that SMART knew and intentionally omitted the material fact that "SMART would misrepresent to the United States government that Mr. Obregon would work as an Industrial Quality engineer," "the misrepresentation to the United States government would impact Mr. Obregon's future eligibility for a green card" and "the misrepresentations to the United States would serve as a bar to Mr. Obregon's entry to the United States" (*Id.* at ¶ 90.)[8] These allegations are insufficient to establish mail and wire fraud. To rise to the level of defrauding, Plaintiff must show that SMART's failure to inform him of the potential impact on his immigration status went to the nature of the bargain—his employment with SMART. The alleged misrepresentations do not relate to the bargain for employment because, as discussed above, Plaintiff received employment at the agreed upon terms and conditions. Plaintiff received what he bargained for. That Plaintiff would not have entered into employment with

---

[8] As shown above, Plaintiff had no property right to admission to the United States. (*See* section C at 11.)

SMART if he had all the information, or knew of the potential impacts on his green card status, is alone insufficient to establish mail and wire fraud.[9]   At most, the alleged omissions/misrepresentations are deceiving, which is insufficient to establish the requisite intent to defraud.

> b.   *Plaintiff cannot establish the predicate act of fraud in foreign labor contracting.*

"The [predicate act] of fraud in foreign labor contracting occurs when someone: (1) recruits, solicits, or hires a person outside the United States, or causes another person to do so, or attempts to do so; (2) does so by means of materially false or fraudulent pretenses, representations or promises regarding that employment; and (3) acts knowingly and with intent to defraud." *United States v. Bart*, 888 F.3d 374, 378 (8th Cir.) (citing 18 U.S.C. § 1351), *cert. denied*, 139 S. Ct. 266 (2018).  Plaintiff's claim fails because he has not pled adequate facts showing SMART made materially false or fraudulent misrepresentations to Plaintiff; and/or "caused" the Co-Conspirators to make materially false or fraudulent misrepresentations.

---

[9] It is highly implausible that Plaintiff, an engineer, was unaware that lying to the U.S. Government during his interview process for a TN Visa could affect his future eligibility for participation in the United States visa programs.

22

As discussed above, Plaintiff cannot establish that SMART made any material misrepresentations to him about his employment at SMART. Plaintiff also fails to allege any facts showing that SMART "caused" AGWM or WK Law Firm to provide materially false information.  Plaintiff's conclusory allegations that AGWM and WK had express authority to make misrepresentations, without any other supporting details, is insufficient to meet the Rule 9 standard.  Specifically, Plaintiff's FAC is void of any factual allegations, including when, where, or who acting as an agent of SMART authorized or directed AGWM or WK Law Firm to make material misrepresentations to Plaintiff or otherwise "caused" AGWM or WK Law Firm, P.C. to illegally recruit or hire Plaintiff as required under § 1351.

Next, Plaintiff attempts to establish his Section § 1351 claim by asserting that Defendants made material misrepresentations in the TN Support Letter addressed to the Acting Nonimmigrant Visa Section of the United States Consulate including that "Mr. Obregon would work as an Industrial Quality Engineer in our Production Department" and the job duties he would perform would be those of a Quality Engineer.  (ECF No. 18 at ¶¶ 115-16.)  However, Plaintiff's claim must fail because he again fails to identify and plead with any specificity "misrepresentations" made by SMART.  Plaintiff fails to explain why the information provided to the Consular General is false, fraudulent, or misleading,

much less establish that Defendants provided such allegedly false information with the requisite intent to defraud the government. While Plaintiff alleges he worked on the production line, he fails to allege the job duties he actually performed while employed with Defendant and how those duties differed from the job duties provided to the consultant. Plaintiff's conclusory allegations that SMART made misrepresentations regarding the nature of the job duties performed without any supporting allegations is insufficient to meet the heightened Rule 9(b) standard.  Plaintiff has failed to provide sufficient allegations that Defendants violated § 1351, and therefore, Plaintiff has failed to establish a requisite predicate act.  For these reasons, Plaintiff's § 1962(c) claim should be dismissed.

  **E.**  **The Amended Complaint Fails to Allege any Facts from Which it Could Plausibly be Inferred that a Conspiracy Existed.**

18 U.S.C. § 1962(d) makes it illegal to conspire to violate § 1962(c). *Am. Dental Ass'n*, 605 F.3d at 1293-94. The failure to state a claim for a primary RICO violation under  § 1962(c) causes the civil RICO conspiracy claim to necessarily fail.  *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1153 (11th Cir. 2011) ("[s]ince we have already upheld the district court's dismissal of the RICO claims based on § 1962(c), the only substantive RICO provision that Douglas relies on, Douglas cannot prevail on a conspiracy claim").  Accordingly, Plaintiff's § 1962(d) claim

must fail because, as discussed above, Plaintiff fails to establish a legally cognizable claim under § 1962(c).

Assuming arguendo, Plaintiff's § 1962(c) survives dismissal; Plaintiff's claim under § 1962(d) is still due to be dismissed.  In order to state a claim under § 1962(d), Plaintiff must allege facts from which this Court can infer that there was an agreement involving each defendant to commit at least two predicate acts. *Hecht v. Comm. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  Plaintiff must allege "that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise," that "each co-conspirator knew the conspiracy's goals and agreed to facilitate them." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04 CV 5045, 2008 WL 4146190, at *14 (E.D.N.Y. Sept. 5, 2008) (citation omitted).  Plaintiff must also allege that Defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999); *see also Foster v. Wintergreen Real Estate Co.*, No. 3:08cv00031, 2008 WL 4829674, at * 9 (W.D. Va. Nov. 6, 2008) (the elements of a conspiratorial RICO claim required: "(1) knowledge of the general nature of the conspiracy; (2) agreement by the

48644293 v1

defendant: (a) to personally commit a violation of sections 1962(a)–(c); (b) to aid and abet a violation; or (c) that another conspirator commit a violation; and (3) injury caused by an act in furtherance of the conspiracy"), *aff'd,* 363 F. App'x 269 (4th Cir. 2010).

A complaint alleging conspirator agreement must do more than state mere conclusions of the existence of a conspiracy. Specific factual allegations showing the time and place of conspiracy and the connection of the defendant to the injury are essential in such instances to state a cause of action. *Am. Dental Ass'n*, 605 F.3d at 1291 ("Therefore, not only did Plaintiffs need to plausibly and particularly allege facts showing related instances of mail and wire fraud, but also plausibly allege facts showing that a conspiracy created the alleged scheme.") Bald allegations that the defendants conspired to violate certain statutes, without more specific factual allegations showing the conspiracy and how it violated the plaintiff's rights, simply are not sufficient. *Sigler v. LeVan*, 485 F. Supp. 185, 196 (D. Md. 1980). "The plaintiff must allege facts with respect to each defendant's participation in the fraud." *Am. Dental Ass'n,* 605 F.3d at 1291.

In this case, Plaintiff alleges, in an entirely conclusory manner, that SMART "participated" in the illegal hiring scheme. Yet, Plaintiff fails to plead factual averments showing SMART formed a conspiratorial agreement, knowingly joined

26

a conspiracy to commit predicate acts or directed any of the alleged co-conspirators to engage in any of the alleged predicate acts.

Plaintiff alleges "Defendant AGWM, TESS, and WK Law are Defendant SMART's agents for the purpose of recruiting and hiring TN visa holders from Mexico." (ECF No. 18 at ¶ 57.) However, this is not a predicate act and is legal activity. Plaintiff does not assert any factual bases showing SMART agreed to recruit or hire TN Visa holders unlawfully or that SMART directed co-conspirators to otherwise recruit and hire TN visa holders unlawfully. More specifically, the FAC is devoid of any allegations as to when, where and how any particular agent of SMART agreed to commit the illegal hiring scheme or otherwise directed AGWM or TESS to conduct the illegal hiring scheme. The FAC is devoid of any allegations as to who at SMART knew of the illegal hiring scheme, approved of it or otherwise instructed that such hiring be done in a fashion that was unlawful. That AGWM, TESS and SMART agreed that AGWM and TESS would assist SMART in hiring does not in itself support that the parties agreed to commit federal crimes. Plaintiff's allegations are nothing more than "formulaic recitations" of conspiracy, which the Supreme Court plainly has held as insufficient." *See Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Plaintiff premises his conspiracy claim on several allegations concerning AGWM's and WK Law Group, P.C.'s individual actions and assert their actions show an agreement between AGWM, TESS, WK Law Group, PC and SMART to commit predicate acts or otherwise achieve the purpose of the illegal hiring scheme.  But, absent a recitation of the RICO statute that "Defendants agreed to participate in the objective of the enterprises to engage in the fraudulent scheme", Plaintiff's claim again fails to allege facts showing any agreement or knowledge on the part of SMART, or any of the parties.

Plaintiff's allegations about what Julian Kim, as agent of AGWM, knew, (ECF No. 18 at ¶¶ 85-86), and what Woon Kim, of WK Law Group, knew, (*id.* at ¶ 111), do not provide any factual support of a conspiratorial agreement involving Smart.  There were no allegations showing that a representative of Smart agreed to, knew of, expressly authorized, or otherwise approved the alleged illegal hiring scheme.  Plaintiff makes no allegations that Smart agreed to commit predicate acts with AGWM, TESS or WK Law Group.  Mere unsupported conclusory allegations as to Smart fail to satisfy the Rule 9(d) standard and fail to show a conspiracy.

Ultimately, Plaintiff's FAC does nothing more than assert that Defendants agreed to recruit Mexican citizens to work for SMART through the lawful TN Visa program authorized by the United States government and that such alleged co-

28

conspirators "acting as agents of SMART" had knowledge that SMART wished to recruit and hire Mexican citizens through the TN program.  As the Eleventh Circuit recognized in *American Dental Ass'n v. Cigna Corp.*, the Supreme Court's current review standard under 12(b)(6) requires courts to "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (citing *Iqbal*, 556 U.S. at 681-82 and *Twombly*, 550 U.S. at 567).  Mere conclusory allegations of conspiracy involving SMART are insufficient.  *Am. Dental* Ass'n, 605 F.3d at 1291.

## F.  Plaintiff's Remaining Claims Against Defendant SMART Must be Dismissed for Lack of Personal Jurisdiction.

The only basis alleged by Plaintiff for personal jurisdiction over SMART is derived from Plaintiff's RICO claim.  (ECF No. 18 at ¶ 5.)  Because Plaintiff's RICO claim is due to be dismissed, Plaintiff cannot rely upon the RICO statute as a basis to assert personal jurisdiction over SMART in this Court.  Plaintiff has not alleged personal jurisdiction over SMART pursuant to Georgia's long-arm statute.  Nor would due process allow this Court to exercise personal jurisdiction over SMART as to the remaining claims asserted against SMART.

> Two types of personal jurisdiction exist for corporations. A court may assert "general," or "all-purpose," jurisdiction over a defendant in its home State, where the

> defendant is incorporated or headquartered.  Or a court
> may exercise "specific," or case-based, jurisdiction over
> a defendant if the plaintiff's claims "arise[] out of or
> relate[] to" the defendant's foreign State activities.

*Canaday v. Anthem Cos.*, 9 F.4th 392, 396 (6th Cir. 2021) (citations omitted), *cert. denied*, 142 S. Ct. 2777 (2022), *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779-80 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018). Smart is not incorporated or headquartered in Georgia so general jurisdiction does not apply.  (ECF No. 18 at ¶ 45.)  Plaintiff's § 1981, Title VII,[10] and FLSA claims relate to alleged unfair employment practices that occurred at SMART's facility in Luverne, Alabama.  Those claims do not arise out of activities by SMART in Georgia sufficient to support specific jurisdiction.  Thus, this Court has no personal jurisdiction over the remaining claims against SMART and Plaintiff's complaint as to SMART should be dismissed for lack of personal jurisdiction.

### G.    Conclusion.

For the reasons stated above, this Court should dismiss Plaintiff's FAC as to SMART.

---

[10]  42 U.S.C. § 2000e-5(f)(3) requires jurisdiction for plaintiff's Title VII claim in the Middle District of Alabama.

48644293 v1

s/ Michael L. Lucas                          s/ Jon M. Gumbel
Michael L Lucas (pro hac vice)               Jon M. Gumbel
Marcel L. Debruge                            Georgia - GA Bar #315195
Ingu Hwang                                   BURR & FORMAN LLP
BURR & FORMAN LLP                            171 17th Street, NW
420 North 20th Street, Suite 3400            Suite 1100
Birmingham, Alabama 35203                    Atlanta, GA 30363
Telephone: (205) 251-3000                    Telephone: (404) 815-3000
Facsimile: (205) 458-5100                    Facsimile: (404) 817-3244
mlucas@burr.com                              jgumbel@burr.com
mdebruge@burr.com
ihwang@burr.com


Attorneys for Defendant SMART ALABAMA, LLC


## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing SMART Alabama, LLC's Memorandum of Law In Support Of Motion To Dismiss Plaintiff's First Amended Class Action Complaint has been prepared with Book Antiqua 13-point font, one of the font and point selections approved by the Court in LR 5.1C.

s/ Michael L. Lucas
Michael L. Lucas
(pro hac vice)
mlucas@burr.com

Attorney for Defendant
SMART ALABAMA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing via CM/ECF, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, on this the 20th day of September, 2022:

Daniel Werner
James Radford
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
*Attorneys for Plaintiff*

Brian G. Kim
Brian Kim, PC
1815 Satellite Blvd.
Suite #403
Duluth, Georgia 30097
*Attorney for AGWM United, LLC*

David R. Kresser
FISHER & PHILLIPS, LLP
1075 Peachtree Street, NE #3500
Atlanta, Georgia 30309
*Attorney for Total Employee Solution Support, LLC*

Betsy Bulat
Fei Drouyor
MARTENSON, HASBROUCK & SIMON, LLP
2573 Apple Valley Road, NE
Atlanta, Georgia 30319
*Attorney for WK Law Group, P.C., and Woon Kim*

s/ Michael L. Lucas
OF COUNSEL

32

48644293 v1