**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Jaime Obregon Acosta, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:22-cv-01209-TWT |
| v. | ) ) | |
| SMART Alabama, LLC; and AGWM United, LLC; Total Employee Solution Support, LLC; WK LAW Group, PC; and Woon Kim, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS WK LAW GROUP, PC AND WOON KIM'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS COUNT I AND COUNT V OF
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants WK Law Group, PC ("WK Law") and Woon Kim ("Kim"; collectively, "Defendants"), by and through counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss Count I and Count V of Plaintiff Jaime Obregon Acosta's ("Plaintiff") First Amended Class Action Complaint ("FAC") and Supporting Memorandum of Law.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As noted by Defendant Total Employee Solution Support, LLC ("TESS"), this

is a case in desperate search of a viable claim, and that search is only more desperate in its pursuit of Kim and WK Law, the law firm whose only role in this matter was to successfully help Plaintiff obtain the visa he requested. Plaintiff filed his original putative class action Complaint against only Defendants SMART Alabama, LLC ("SMART") and AGWM United, LLC ("AGWM"), alleging that they engaged in a conspiracy to unlawfully recruit Mexican workers. In response to a motion to dismiss filed by SMART (Doc. 9-1), Plaintiff amended his complaint and added Kim, WK Law, and TESS as Defendants.

This matter arises out of Plaintiff's application for employment as a Quality Engineer with SMART via AGWM, a staffing agency that placed employees with SMART. ((FAC ¶¶ 78-85.) SMART then made an offer of employment to Plaintiff for this position. (FAC ¶¶ 94-95.) Thereafter, Defendants prepared Plaintiff's TN[1] visa application, which application was approved by the U.S. government. (FAC ¶¶ 100, 104-106, 114.) Plaintiff alleges that Defendants fraudulently misrepresented the visa application, and, as a result, Plaintiff's ability to secure a green card in the

---

[1] TN visa allows Canadian and Mexican employees to work in the U.S. TN visa is easily granted by the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS") with an 88.7% approval rate in Q2 Fiscal Year 2020. *See* I-129 - Petition for a Nonimmigrant Worker NAFTA Professionals (TN) by Fiscal Year, Quarter, and Case Status: October 1, 2014 - March 31, 2020. https://www.uscis.gov/sites/default/files/document/data/I129_Quarterly_Request_for_Evidence_FY2015_FY2020_Q2.pdf (last viewed September 29, 2022).

future may be adversely impacted. This is the basis of Plaintiff's Racketeer Influenced and Corrupt Organizations (RICO) claim in Count I.

Plaintiff makes the extraordinary leap that because Defendants prepared Plaintiff's TN visa, Defendants must have engaged in "similar" alleged fraudulent conduct as the other co-Defendants (FAC, ¶¶ 124-25.), or that Defendants somehow "conspired" with the other co-Defendants to do so. (FAC, ¶ 77.)

For the reasons set forth more fully below, a lawyer cannot be sued merely for doing the job he was asked to do by his client – which is exactly the "misconduct" on which Plaintiff's outrageous claims are based. And Plaintiff alleges no facts that demonstrate Defendants were aware that any representations made by SMART or AGWN to Plaintiff about his position were in any way inaccurate or would have subjected him to any unlawful treatment. Count I of Plaintiff's First Amended Complaint (RICO) against Defendants should be dismissed because Plaintiff lacks standing to sue Defendants and his allegations against Defendants are woefully insufficient to state a claim upon which relief can be granted. Count V of Plaintiff's First Amended Complaint (legal malpractice) must be dismissed because it fails to comply with O.C.G.A. § 9-11-9.1 and is precluded under Georgia law. Given the Plaintiff's failure to plead the proper legal basis for the only counts alleged against WK Law and Kim, counts I and V, WK Law and Kim should be dismissed with

prejudice from this action altogether.

## II.    LEGAL STANDARD

### A. Rule 12b(6) and Rule 8(a) Plausibility Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2).

To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that the Rule 8(a)(2) pleading

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,*550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955); *see also Am. Dental Assoc.v. Cigna Corp.,* 605 F.3d 1283, 1288–90 (11th Cir. 2010).

## B. Rule 9(b) Heightened Pleading Standard.

Because Plaintiff's RICO claim is premised on allegations of fraud, those allegations must satisfy the heightened pleading requirement of Fed. R. Civ. Proc. 9(b). *Am. Dental Ass'n*, 605 F.3d at 1291; *Ambrosia Coal & Constr. Co. v. Pags Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("[c]ivil RICO claims, which are essentially a certain breed of fraud claims must be plead with an increased specificity"). To do so, Plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[]; and (4) what the [D]efendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997);

5

*Speier-Roche v. Volkswagen Grp. of Am., Inc*., No. 14-20107, 2014 WL 1745050, at

\*7 (S.D. Fla. Apr. 30, 2014) (citation omitted) (plaintiff must allege "the 'who, what,

when, where and how of the alleged fraud"). In other words, Plaintiff must "offer

more than mere conjecture." *Alhassid*, 60 F. Supp. 3d at 1316 (citation omitted)

(internal quotations omitted); *Kharb v. Ericsson, Inc.,* No. 4:17-cv-619, 2018 WL

8369848 (E.D. Tex. Nov. 5, 2018) (Rule 9(b) standard applicable to claims of fraud

in foreign labor contracting); *R. & R. adopted*, 2019 WL 1198399 (E.D. Tex. Mar.

14, 2019). Plaintiff needs to plausibly and particularly allege facts showing related

instances of mail and wire fraud, but also plausibly allege facts showing a conspiracy

created the alleged scheme. *Am. Dental Ass'n*, 605 F.3d at 1291. Plaintiff's failure

to allege any of the four (4) required fraud elements against Defendants has resulted

in Plaintiff not pleading its prima facie case.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiff Lacks Standing to Sue Defendants because Plaintiff Has no Property Right in an Immigrant Visa.

Even assuming the truth of Plaintiff's factual allegations—which Defendants

adamantly dispute—Plaintiff fails to state a claim for a violation of the RICO statute

because he has no property right in an immigrant visa—a necessary condition for

Plaintiff to suffer the injury he alleges under the RICO statute. The RICO private

action remedy is contingent on injury to a business or property. *See* 18 U.S.C. §

1964(c). Under Section 1964 of RICO, plaintiff must have "statutory standing" to bring the instant RICO claim. *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1348-49 (11th Cir. 2016). Statutory standing requires plaintiffs to establish (1) an injury to "business or property" and (2) that the injury was "by reason of" the predicate RICO violation. *Id.* at 1348; *see also* 18 U.S.C. § 1964(c) ("Any person *injured in his business or property* . . . may sue therefor . . .") (emphasis added). In other words, Plaintiff must make a heightened proximate causation showing with respect to his RICO claim. *Liquidation Comm'n of Banco Intercontinental*, *S.A. v. Renta*, 530 F.3d 1339, 1350 n.14 (11th Cir. 2008) (citing 18 U.S.C. § 1964(c)). A causal link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269-71, 274 (1992). Courts should, therefore, scrutinize proximate causation at the pleading stage and carefully evaluate whether there is a direct connection between alleged injury and the claimed RICO violations. *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 460-61 (2006); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708-09 (11th Cir. 2014).

Plaintiff erroneously concludes that he has a property interest in TN and B1/B2 visas for entry into the United States. (FAC, ¶¶133, 139.) However, the decision to admit or exclude an alien from the United States is within the plenary power of Congress. *Kleindienst v. Mandel*, 408 U.S. 753, 765-66 (1972). Plaintiff,

an alien, non-citizen, has and had no right to admission to the United States and certainly no property right to be so admitted. *Azizi v. Thornburg,* 908 F.2d 1130, 1134 (2d Cir. 1990) (an alien does not have an "inherent property right to an immigrant visa"); *De Avilla v. Civiletti*, 643 F.2d 471, 477 (7th Cir. 1981) (there is "no vested right in the issuance of a visa"). Suffice it to say, even if the Court treats as true Plaintiff's claims for misrepresentation for purposes of this motion, the FAC fails to state a claim for relief under the RICO statute because Plaintiff has no property right to an immigrant visa, and, therefore, Plaintiff suffered no injury to property.

Plaintiff's general conclusory allegations fail to demonstrate a property interest or proximate causation that meets the heightened pleading requirements for fraud claims. Therefore, Plaintiff lacks standing to bring a RICO claim against Defendants. Accordingly, Count I of Plaintiff's First Amended Complaint against Defendants should be dismissed with prejudice for this reason alone.

### B. Plaintiff Does not Allege Sufficient Facts to Support a RICO Claim (Count I) Against Defendants and Must be Dismissed.

Assuming the Court concludes that Plaintiff has alleged he suffered a cognizable injury to property, Plaintiff's RICO claim still fails because he fails to allege facts sufficient to support each material element of his RICO claim. To state a RICO claim, a plaintiff must establish that a defendant (1) operated or managed

8

(2) an enterprise (3) through a pattern (4) of racketeering activity that includes at least two racketeering acts. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016). A plaintiff must do more than allege the above elements in a "boilerplate fashion" as Plaintiff here has done. Rather, Plaintiff must "allege sufficient facts to support each element" of his RICO claim. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).

      1.  <u>Plaintiff Fails to Sufficiently Allege the Existence of an Enterprise.</u>

Under RICO, an "enterprise" is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that Defendants AGWM, Defendants, SMART, and TESS constituted an association-in-fact enterprise. (FAC, ¶ 61.) Plaintiff also alleges that Defendants AGWM, WK Law, Kim, SMART, TESS, and Hyundai constituted an association-in-fact enterprise. (FAC, ¶ 62.) The Supreme Court has defined an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). Plaintiff alleges that this purported association-in-fact enterprise shared the common purpose to "recruit, contract,

transport, and employ Mexican TN visa holders to SMART's business operations in Alabama." (FAC, ¶ 197.)

First, the FAC fails to explain how WK Law and Kim, specifically, or even the other co-Defendants, agreed to create and undertake the alleged fraudulent scheme. Instead, "[p]laintiff[] do[es] not allege how defendants *agreed* to employ any of these procedures as part of a long-term criminal enterprise predicated on acts of mail and wire fraud*")*. *Am. Dental Ass'n*, 605 F.3d at 1292 (emphasis added). With no further explanation, Plaintiff includes a conclusory allegation that "Defendants agreed to participate . . . in the fraudulent scheme." (AC, ¶ 151.) That is fatal to Plaintiff's RICO claim.

Nor could a fraudulent scheme be inferred from the conduct Plaintiff alleges. *See Am. Dental Ass'n,* 605 F.3d at 1293. Plaintiff offers only "conclusory statements" and "formulaic recitations" that such an agreement existed, which are insufficient. *Id*. at 1293-94. Plaintiff also does not address the "obvious alternative explanation" that instead of them each agreeing to perpetuate an elaborate conspiracy, Defendants were each independently pursuing their own economic self-interest by providing respective services. *Id*. at 1295. The allegations in the First Amended Complaint are just as consistent with each of the Defendants "going about [their] own business." *United Food & Commercial Workers Unions & Emp'rs*

*Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013); *cf. Am. Dental Ass'n*, 605 F.3d at 1295 (finding that the plaintiffs' allegations were "equally indicative of rational independent action").

As the Supreme Court and the Eleventh Circuit have emphasized, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955; *see Am. Dental Ass'n*, 605 F.3d at 1294 (holding that "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy"); *see also Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017) (holding that "parallel conduct alone cannot support a plausible inference of an agreement"). This is true both in situations of unknowing parallel conduct and in situations of parallel conduct that was "consciously undertaken." *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955; *accord Almanza*, 851 F.3d at 1069.

Even if the factual situation Plaintiff presents does not "entirely rule out" the possibility that Defendants or the other co-Defendants all agreed to carry out a fraudulent scheme, "there is ultimately not enough in th[e] [Amended] [C]omplaint to elevate that inference from a 'sheer possibility' to something that is 'plausible on

its face.'" *Walgreen Co.*, 719 F.3d at 855 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

The Eleventh Circuit has been clear that "[t]o cross the line from a possible to a plausible existence of an agreement, [a] plaintiff[] must allege a 'further circumstance pointing toward a meeting of the minds.'" *Almanza*, 851 F.3d at 1068 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). To provide this further factual enhancement, a plaintiff must assert allegations explaining how exactly the defendants went about entering into an agreement with each other. *Id*. Plaintiff did not allege how Defendants agreed to anything. "It [is]n't enough that the defendants all ended up doing the same fraudulent thing." *Id*. at 1068–69. Though Plaintiff describes what he believes to be the fraudulent purpose of the alleged enterprise, he offers "no factual allegations from which [the Court] could infer" that Defendants "decided on this purpose together." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1213 (11th Cir. 2020). For example, Plaintiff includes "no allegations about specific interactions" between WK Law, Kim, and the other co-Defendants from which the Court could infer the existence of a RICO agreement, or "allegations regarding the origins or scope of the alleged scheme." *Id*. Plaintiff simply asks the Court to speculate that WK Law, Kim, and the other co-Defendants all "decided at some point to pursue fraud" and decided that together. *Id*.

Even if some of the Defendants individually committed fraud, to proceed with a RICO claim Plaintiff must plausibly allege that the individuals who allegedly made up the association-in-fact enterprise "shared a common purpose to do so." *Id*. at 1214 (citing *Ray*, 836 F.3d at 1352–53 (11th Cir. 2016)). Plaintiff has not made this showing against WK Law and Kim, and therefore cannot state a RICO claim against them. *Id*. at 1215.

   2. Plaintiff Fails to Allege that Defendants Participated in the Operation or Management of the Enterprise.

A RICO plaintiff must show that each defendant "participated in the operation or management of the enterprise itself" and therefore played "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 176 (1993). "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)." *Hotels, LLC v. Patel*, 986 F.3d 692, 698–99 (7th Cir. 2021) (quoting *Goren*, 156 F.3d at 728); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice.").

Plaintiff's allegations amount to nothing more than a suggestion that Defendants performed services for the alleged enterprise. Plaintiff alleges that in an

13

email from AGWM principal Julian Kim to Plaintiff, Julian Kim indicated Plaintiff would work on SMART's production line for one year and would receive a promotion to an engineer position through his evaluation.  (FAC, ¶ 83.c.)  Plaintiff does not allege that WK Law and Kim had knowledge of this communication, let alone the general arrangement between SMART and Plaintiff described in the email. Rather, Plaintiff's allegations go the other way. Plaintiff strongly implies that WK Law knew only that Plaintiff's position was Industrial Quality Engineer because WK Law provided Plaintiff with a document describing this position. (FAC, ¶ 106.c.) Suffice it to say, there are no facts in the First Amended Complaint supporting an allegation that Defendants had knowledge of a conspiracy to violate the RICO statute and agreed to conduct or participate in the affairs of an enterprise through a pattern of racketeering.

    3.   Plaintiff Fails to Sufficiently Allege a Pattern of Racketeering Activity.

    It is well established that in order to prove a "pattern of racketeering activity" it is not sufficient to simply establish two isolated predicate acts. RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004); *see also Jones v. Childers,* 18 F.3d 899, 912 (11th Cir. 1994) (requiring proof of something "continuing" in nature) (quoting *United States v. Gonzalez,* 921 F.2d 1530, 1545

(11th Cir.1991)). The continuity element of a pattern of racketeering activity is crucial to a viable RICO claim. *See Jackson*, 372 F.3d at 1265. The Supreme Court explained it thusly:

> "Continuity" is both a closed– and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.... Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*H.J. Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2902 (emphasis in original). In "open-ended" cases that rely on alleging the *threat* of continuity, [a] plaintiff[] can meet [his] burden by establishing either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242.

*a. Plaintiff fails to establish closed-ended continuity.*

Plaintiff plainly fails to allege facts sufficient to establish closed-ended continuity. Plaintiff's conclusory allegation that "Defendants engaged in the racketeering activity described in this claim repeatedly in 2019 through the present" is at odds with other facts he alleges. (FAC, ¶ 207). The specific incidents at issue began on January 23, 2020, when Plaintiff applied through an AGWM job posting

15

to work at SMART (FAC, ¶ 79). The circumstances terminated naturally on October 2, 2020 when Plaintiff's TN visa application was approved.  (FAC, ¶ 122.) Setting aside the fact that the incident alleged by Plaintiff does not involve any acts by Defendants, the alleged predicate acts spanned only nine months. *Jackson*, 372 F.3d at 1267 ("[t]he overwhelming weight of case authority suggests that nine months is not an adequately substantial period of time").

Furthermore, courts have refused to find a closed-ended pattern of racketeering—even in schemes spanning longer periods—when a plaintiff's allegations concern only a single scheme with a discrete goal. *Id.*; *see, e.g., Efron*, 223 F.3d at 18 (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C.Cir.1995) (same as to alleged three-year scheme); *see also Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 780 (7th Cir.1994) (explaining number of victims, the presence of separate schemes, and the occurrence of distinct injuries should also be considered). In view of the narrow scope of the alleged racketeering activity and the limited time frame in which it is said to have taken place, Plaintiff does not meet the closed-ended continuity requirement necessary to sustain a RICO claim.

16

*b. Plaintiff fails to establish open-ended continuity.*

Plaintiff also fails to allege facts supporting a claim of closed-ended continuity. This would require Plaintiff to allege either that the acts were a part of the Defendants' "regular way of doing business," or that the illegal acts threatened repetition in the future. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242-43, 109 S.Ct. 2893, 2902 (1989). Plaintiff fails to allege any threat of future fraud. He alleges only that "[t]he fraudulent scheme . . . has become a regular way of conducting the Defendants' ongoing legitimate businesses." (FAC, ¶ 149.) This conclusory statement is bereft of any support elsewhere in the complaint and should not be credited for purposes of deciding this Motion.

In short, because Plaintiff has failed to advance facts sufficient to support a theory of either open- or closed-ended continuity, he has not adequately pled a pattern of racketeering activity sufficient to survive this Motion. *Jackson*, 372 F.3d at 1269.

4. <u>Plaintiff Fails to Adequately Plead a Conspiracy Claim Against Defendants.</u>

Plaintiff's claim for civil conspiracy fails for multiple reasons. First, Plaintiff's claim for civil conspiracy rises and falls with its primary RICO claim. The failure to state a claim for primary RICO violation under § 1962(c) (the substantive RICO violation) causes the civil RICO conspiracy claim under § 1962(d) to

necessarily fail. *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1153 (11th Cir. 2011) (holding that conspiracy claim cannot survive after the RICO claims based on § 1962(c) had been dismissed).

Second, even if Plaintiff's primary RICO claim survives, Plaintiff fails to allege sufficient facts to establish a civil conspiracy. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant[s] agreed to the overall objective of the conspiracy; or (2) by showing that the defendant[s] agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at 1293 (citation and internal marks omitted). Here, Plaintiff merely offers conclusory statements that Defendants or the other Defendants "agreed to . . . engage in the fraudulent scheme."  (FAC, ¶ 151.) Plaintiff fails to allege facts to establish any agreement to commit a conspiracy or to commit a pattern of racketeering activity and fails to allege any particularized dates regarding the creation of such an agreement or regarding when each Defendant knowingly and willfully joined the conspiracy.

Specific to Defendants, the First Amended Complaint contains no allegations that establish when, how, or why Defendants became involved in such a purported conspiracy. Accordingly, Plaintiff has failed to plead his RICO claims with particularity. *See Yandell*, 2017 WL 7371183, at *5 (footnote omitted) (concluding

18

that plaintiffs' "allegations fail[ed] to state a RICO claim" where "[n]otably absent from [p]laintiffs' allegations [were] the precise statements that each particular [d]efendant made, how they personally engaged or agreed to engage in [the] ... fraud, when the conduct occurred, or how the parties benefited from the scheme").

Plaintiff alleges "Defendant AGWM, TESS, and WK Law are Defendant SMART's agents for the purpose of recruiting and hiring TN visa holders from Mexico." (FAC, ¶ 57.) However, this is not a predicate act and is a legal activity. Plaintiff does not assert any factual bases showing Defendants agreed to recruit or hire TN Visa holders unlawfully. More specifically, the AC is devoid of any allegations as to when, where, and how any particular agent of SMART directed Defendants to conduct the illegal hiring scheme. The AC is devoid of any allegations that Defendants knew of the illegal hiring scheme or that Defendants knew Plaintiff would not be working as an engineer. Just because Defendants assisted SMART in filing a TN visa does not in itself support that the parties agreed to commit federal crimes. Plaintiff's allegations are nothing more than "formulaic recitations" of conspiracy, which the Supreme Court plainly has held as insufficient." *See Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Plaintiff premises his conspiracy claim on several allegations concerning AGWM's and Defendants' individual actions and asserts their actions show an agreement between AGWM, Defendants, and SMART to commit predicate acts or otherwise achieve the purpose of the illegal hiring scheme. But, absent a recitation of the RICO statute that "Defendants agreed to participate in the objective of the enterprises to engage in the fraudulent scheme", Plaintiff's claim again fails to allege facts showing any agreement or knowledge on the part of Defendants.

**C. Plaintiff's Remaining Legal Malpractice Claim (Count V) Against Defendants Must be Dismissed for Failure to Comply with the Requirements of O.C.G.A. § 9-11-9.1 and Is Precluded Under Georgia Law.**

Plaintiff's claim for legal practice fails primarily because Plaintiff did not attach an expert affidavit to the FAC as required by Georgia statute. Even assuming this is an amendable defect, the Court is inclined to permit a second amendment to the complaint because such an amendment would not address the claim's other deficiencies, which are incurable.

1. The Legal Malpractice Claim Must be Dismissed for Failure to Comply with the Requirements of O.C.G.A. § 9-11-9.1.

O.C.G.A. § 9-11-9.1 requires the plaintiff to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each

such claim against an attorney for legal malpractice. *Haynes v. Walmart Lovejoy, et. al*, 2017 WL 5505318 (ND Ga. 2017); *Howell v. Jackson*, 16 S.E.2d 45 (Ga.App. 1941); *Pilgrim v. Landham*, 11 S.E.2d 420 (Ga.App. 1940). Plaintiff has failed to provide an affidavit along with the First Amended Complaint, and his legal malpractice claim against Defendants fails as a matter of law and must be dismissed. *Id*.

> 2. The Legal Malpractice Claim is Precluded because Defendants Successfully Obtained a TN Visa for Plaintiff.

Plaintiff's legal malpractice claim fails on the fundamental grounds that Defendants achieved the results for which they were retained. *Tante v. Herring*, 453 S.E.2d 686, 687 (Ga. 1994) (legal malpractice claims barred where lawyer obtained results client desired and sought).

Here, Plaintiff concedes Georgia law applies. (FAC, ¶¶ 13, 43.) Plaintiff admits Defendants assisted him in achieving his ultimate goal of receiving a TN visa. (FAC, ¶ 120.) Accordingly, Plaintiff's claim for legal malpractice is subject to dismissal.

> 3. The Legal Malpractice Claim Otherwise Fails to State a Claim Upon Which Relief Can Be Granted.

To the extent Plaintiff's legal malpractice claim is based upon allegedly fraudulent conduct, his claim also fails because he has not sufficiently alleged fraud.

As set forth above, Count I of RICO claim against Defendants should be dismissed, and thus there are no grounds against Defendants for committing fraud, or breached any duty that constitutes legal malpractice when preparing Plaintiff's TN visa petition. Plaintiff has failed to meet Rule 9(b) heightened pleading standard as to the alleged "intentional, malicious, or fraudulent" conduct.  (FAC, ¶ 243.)

The court is not required to accept conclusory allegations made "on information and belief." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551, 557 (2007)) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible)).

In *Hays v. Page Perry*, *LLC*, 627 Fed. Appx. 892, 898 (11th Cir. 2015), the Eleventh Circuit Court of Appeals upheld the trial court's dismissal of the plaintiff's legal malpractice complaint because it failed to sufficiently allege facts supporting theft on which the claims were based. The Court elaborated that *Hays's* legal malpractice claim also failed because Plaintiff cannot demonstrate "that 'but for the [attorney's] error, the outcome would have been different." *Szurovy v. Olderman*, 243 Ga. App. 449, 452 (Ga. Ct. App. 2000) (quoting *Houston v. Surrett*, 222 Ga. App. 207, 209 (Ga. Ct. App. 1996); *see also*, *Hopkinson v. Labovitz*, 263 Ga. App.

702 (Ga. Ct. App. 2003); *Studio X, Inc. v. Weener, Matson & Nathan, LLP*, 276 Ga. App. 652, 654 (Ga. Ct. App. 2005).

The First Amended Complaint fails to allege Defendants made any false statement in the TN visa petition. In fact, nowhere does Plaintiff allege that Defendants knew Plaintiff would work as a production line worker. Plaintiff applied for the position of Quality Engineer with SMART; the job offer Defendants received confirmed the position of Quality Engineer; and Defendants prepared Plaintiff's TN visa application for the position of Quality Engineer. (FAC, ¶ 96.b., 106.c., 116.b.)

Plaintiff alleges only that Defendants failed to provide ordinary care, skill, and diligence in his representation of Plaintiff; suffered damages caused and proximately caused by Defendants' failure to provide ordinary care, skill, and diligence in his representation of Plaintiff; Defendants' misconduct was intentional, malicious, or fraudulent; and that the misconduct rose to the level of bad faith in dealing with Plaintiff.  (FAC, ¶¶ 241-244.) The mere recital of legal principles is nothing but conclusory allegations. Plaintiff fails to identify any facts showing that Plaintiff is not merely speculating that his application was denied based on the alleged misrepresentations as the heightened pleading standard requires. Plaintiff (1) does not allege any fact to make that statement plausible; (2) does not identify any alleged "statement," "document," or "misrepresentation" made by Defendants; (3)

23

does not allege the "time, place and [Defendants] person" responsible; (4) does not allege the "content and manner" in which any alleged Defendants statement misled Plaintiff or anyone else; (5) does not allege what Defendants gained; and (6) does not specify how Defendants supposedly "conspired" with the other co-Defendants. Not to mention, Plaintiff fails to allege "but for" causation between Defendants' representation and Plaintiff's damages. Plaintiff's visas could have been denied, for example, due to the increased demand for visas, failure to meet other application requirements, and issues with the employers from whom Plaintiff sought visas. Plaintiff's speculation as to the reasons his subsequent visas were denied cannot prove that, but for Defendants' alleged error, the outcome would have been different. *See Szurovy*, 243 Ga. App. 449, at 452.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff lacks standing to sue Defendants and he fails to state a claim against Defendants upon which relief can be granted. As a result, Count I and Count V of Plaintiff's First Amended Class Action Complaint should be dismissed with prejudice.

Respectfully submitted this 30th day of September 2022.

*By: /s/ Betsy Bulat*
Betsy Bulat
Georgia Bar No. 558428
Feifan "Fei" Drouyor

Georgia Bar No. 184568
Martenson Hasbrouck & Simon LLP
2573 Apple Valley Road NE
Atlanta, GA 30319
Tel: (404) 909-8100
bbulat@martensonlaw.com
fdrouyor@martensonlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a font size of 14.

/s/ Betsy Bulat_____
Betsy Bulat

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which

will automatically send e-mail notification to the following counsel of record:

Daniel Werner
James E. Radford
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA 30030
dan@decaturlegal.com
james@decaturlegal.com

Michael L. Lucas
Burr & Forman LLP
420 North 20th St., Suite 3400
Birmingham, AL 35203
mlucas@burr.com

Jon Michael Gumbel
Burr & Forman LLP
171 17th St., N.W., Suite 1100
Atlanta, GA 30363
jgumbel@burr.com

Brian G. Kim
Brian Kim P.C.
1815 Satellite Blvd., Suite 403
Duluth, GA 30097
brian@leonandkim.com

David R. Kresser
Fisher & Phillips LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA 30309

dkresser@fisherphillips.com

/s/ Betsy Bulat_____
Betsy Bulat