IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Jaime Obregon Acosta,<br>individually and on behalf of<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMART Alabama, LLC; and<br>AGWM United, LLC; WK Law<br>Group, PC; and Woon Kim,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File No.<br>1:22-cv-01209-TWT<br><br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff Jaime Obregon Acosta, individually and on behalf of other similarly situated workers, by and through his counsel, and brings this *Second Amended Class Action Complaint* for damages against Defendants SMART Alabama, LLC ("SMART"); AGWM United, LLC ("AGWM"); WK Law Group, PC ("WK Law"); and Woon Kim (collectively, "Defendants").

### I.   Introduction

1.    This case involves fraud, discrimination, wage violations, and

legal malpractice against foreign workers who were exploited as part of a scheme for cheap labor in SMART's automotive parts production factories.

2.     SMART associated with recruitment agency AGWM and a law firm and attorney, Defendants WK Law and Woon Kim, for the common purpose of recruiting foreign workers to secure Trade NAFTA ("TN") visas for them to work as manual laborers on Defendant SMART's production line.

3.     All Defendants knew that TN visas would not and could not be granted for manual labor positions such as the production line laborer position that SMART wanted filled. This was because TN visas are available only to high-skilled foreign workers to work in high-skilled and technical jobs.

4.     The Defendants therefore hatched a scheme for the recruitment of highly skilled Mexican engineers for invented high-skilled positions that would qualify for the TN visa program.

5.     The plan was a bait and switch accomplished by fraud against the foreign workers and the U.S. government:  hire the high skilled Mexican engineers for non-existent high-skilled jobs; assist these engineers with securing the TN visas by submitting fraudulent documents to the U.S. government; and when the foreign workers arrive to the United States, switch the job to a low-skilled job with lower and discriminatory pay and excessive mandatory work hours.

6.     Plaintiff was a victim of this scheme, having relied upon the fraudulent misrepresentations of Defendants to pay money for fraudulent visas, spend money to travel to the U.S. Consulate for interviews and move from Mexico to the United States for a job he believed was legal and would utilize his specialized education, experience, and skill.

7.     Plaintiff seeks to represent numerous other Mexican national employees who were similarly defrauded by Defendants.

8.     Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

9.     Defendants' conduct also constituted race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

10.     SMART's failure to pay overtime wages based on the regular rate of pay violated the Fair Labor Standards Act ("FLSA").

11.     Plaintiff, on behalf of the Class (as defined below), seeks compensatory and treble damages, as well as attorneys' fees and costs, for the Defendants' violations of RICO.

12.     Plaintiff, on behalf of the Class (as defined below), seeks compensatory and punitive damages, as well as attorneys' fees and costs, for the Defendants' Title VII and Section 1981 violations.

13.     Plaintiff, on behalf of the Class (as defined below), also seeks consequential, incidental, and nominal damages for breaches of contract by Defendant SMART.

14.     Plaintiff and similarly situated TN visa holders also seek back wages, liquidated damages, and attorneys' fees and costs for SMART's violations of the FLSA.

15.     Finally, Woon Kim and WK Law committed legal malpractice against Plaintiff, and Plaintiff individually seeks related damages and other relief therefor.

## II.     <u>Jurisdiction and Venue</u>

16.     The Court has subject matter jurisdiction over the RICO, FLSA, Section 1981, and Title VII claims because they arise under federal law.[1]

17.     The Court has pendent jurisdiction over Plaintiff's state law claims under RICO, for breach of contract and legal malpractice claims because they are part of the same case or controversy as their federal claims.[2]

18.     The Court also has diversity jurisdiction over Plaintiff's legal malpractice claim because Defendants Woon Kim and WK Law reside in, regularly conduct business in, and are citizens of the state of Georgia;

---

[1] *See* <u>28 U.S.C. § 1331</u>.
[2] *See* <u>28 U.S.C. § 1367</u>.

Plaintiff resides in and is a citizen of Mexico; and the matter in controversy exceeds the sum or value of $75,000.[3]

19.     The Court has personal jurisdiction of all Defendants because AGWM, WK Law, and Woon Kim all reside in the State of Georgia, and SMART conducts systematic and continuous activity in this District, including through the RICO enterprise and pattern of racketeering activity alleged below at paragraphs 62-134, 150-205.

20.     Venue is proper in this District pursuant to RICO because all Defendants either reside, are found, have agents, or transact their affairs, including but not limited to the RICO enterprise and pattern of racketeering activity alleged below at paragraphs 62-134, and 150-205 in this District, and "the ends of justice" require that all Defendants be brought before the Court.[4]

21.     Venue is also proper in this District under 28 U.S.C. § 1391 because Defendants AGWM, WK Law, and Woon Kim are residents of this District, and a substantial part of the events and omissions giving rise to the claims alleged in this Second Amended Complaint occurred within this District.

---

[3] *See* 28 U.S.C. § 1332.
[4] *See* 18 U.S.C. §§ 1965 (a), (b), and (d).

**III.      Exhaustion of Administrative Remedies**

22.      On August 4, 2021, Plaintiff timely filed a Charge of Discrimination against SMART with the U.S. Equal Employment Opportunity Commission ("EEOC").

23.      On December 29, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue.

24.      Plaintiff timely brings the Title VII claims herein, as the instant action was filed within 90 days of the EEOC's issuance of the Dismissal and Notice of Rights.

**IV.      Parties**

*Plaintiff and the Putative Classes*

25.      Plaintiff Jaime Obregon Acosta came to Alabama from Mexico on a TN visa on or about October 15, 2020 to work for SMART.

26.      Plaintiff holds a Bachelor of Science in Mechanical Engineering and a Master's degree in Business Administration.

27.      Plaintiff currently resides in Mexico.

28.      Plaintiff and other similarly situated workers are citizens of Mexico and are not citizens of the United States.

29.      Plaintiff and other similarly situated workers are of Mexican national origin.

30.    Plaintiff and other similarly situated workers are Hispanic.

31.    At all relevant times, Plaintiff and other similarly situated workers were employees of SMART within the meaning of Title VII.

32.    At all relevant times, Plaintiff and other similarly situated workers were parties to a contract of employment with SMART within the meaning of 42 U.S.C. § 1981 and the common law.

33.    At all relevant times, Plaintiff and other similarly situated workers were non-exempt employees of SMART under the FLSA.

34.    Plaintiff consented in writing to become party Plaintiff in this action for claims under the FLSA.  *See* ECF Nos. 18 at 61 (Plaintiff's Consent to Sue). Plaintiff resubmits his Consent to Sue as Ex. A.

35.    At all relevant times, Plaintiff and other TN visa holders employed at SMART were each a "person" within the meaning of that term as defined by RICO, in that Plaintiff and other TN visa holders were individuals capable of holding a legal or beneficial interest in property.[5]

**Defendants SMART, AGWM, WK Law Group, and Woon Kim**

36.    Defendant SMART is (a) a Delaware limited liability company; (b) registered with the Alabama Secretary of State as a foreign limited

_____

[5] *See* 18 U.S.C. § 1961(3).

liability company; and (c) has as its principal address 401 Adams Avenue, Suite 780, Montgomery, AL 36104.

37.     According to SMART's website, it is "an automotive parts manufacturer… SMART currently produces stamped metal and robotic welded assemblies for 3 vehicles … for its customer, Hyundai Motor Manufacturing Alabama (HMMA). SMART has a production capacity of 400,000 vehicles/year…."[6]

38.     Defendant SMART transacts business in Georgia and has engaged in a persistent course of fraudulent conduct in Georgia through the other Defendants as business associates, and co-conspirators.

39.     Defendant SMART regularly directed communications to, and received communications from, Defendants AGWM, WG Law, and Woon Kim through their Gwinnett County, Georgia offices.

40.     At all relevant times, SMART employed Plaintiff and other similarly situated workers within the meaning of Title VII.

41.     At all relevant times, SMART was a party to a contract of employment with Plaintiff and other similarly situated workers within the meaning of 42 U.S.C. § 1981 and the common law.

---

[6] See https://www.smart-alabama.com/about-us (last viewed March 25, 2022).

42.     At all relevant times, SMART was an "employer" of Plaintiff and other similarly situated workers within the meaning of the FLSA.

43.     Defendant SMART is an enterprise engaged in commerce or in the production of goods for commerce.

44.     Defendant SMART has a gross volume of sales made or business done of not less than $500,000 per year.

45.     Defendant AGWM is a Georgia domestic limited liability company, with its principal place of business at 4405 Village Field Pl, Suwanee, GA 30024-5199, located in Gwinnett County.

46.     Defendant AGWM directed communications to and received communications from Plaintiff and other similarly situated workers and Defendants SMART, WK Law, and Woon Kim at AGWM's Gwinnett County, Georgia address.

47.     According to AGWM's website, it "recruits qualified TN visa candidates who are allowed to work in the United States. We offer the best human resources services for aerospace, automotive and manufacturing companies across the United States."[7]

---

[7] *See* http://agwmunited.com/ (last viewed March 25, 2022).

48.     Defendant WK Law is a Georgia Domestic Professional Corporation with its principal place of business at 3296 Summit Ridge Pkwy, Ste 1510, Duluth, GA 30096, located in Gwinnett County.

49.     Defendant Woon Kim is an attorney licensed to practice law in the State of New York, and is employed as the CEO, CFO, Secretary, and Registered Agent of WK Law.

50.     Defendants WK Law and Woon Kim directed communications to and received communications from Plaintiff and other similarly situated workers and Defendants SMART and AGWM at Defendant WK Law's Gwinnett County, Georgia address.

51.     According to WK Law's website, Defendant Woon Kim "established Woon Kim Law Group to do one thing and to do it well - getting approvals for immigration cases."[8]

52.     Each Defendant is a "person" within the meaning of RICO, in that it is an individual or an entity capable of holding a legal or beneficial interest in property.[9]

---

[8] *See* http://www.visauslaw.com/about-us.html (last viewed June 30, 2022).
[9] *See* 18 U.S.C. § 1961(3).

V.    **Statement of Facts**

    a. **The TN visa Program**

53.    The North American Free Trade Agreement ("NAFTA"), which

came into force on January 1, 1994, created a special trade relationship

between the United States, Mexico, and Canada.[10]

54.    The U.S. government created the TN nonimmigrant

classification, commonly known as the TN visa, to permit Mexican and

Canadian professionals in certain occupations ("TN profession") to

temporarily enter the United States for employment within their

profession.[11]

55.    Engineers are among the categories of professionals permitted

entry into the United States with TN visas.[12]

56.    A Mexican citizen applying for a TN visa:

> must present documentation sufficient to satisfy the consular
> officer … that the applicant is seeking entry to the United States
> to engage in business activities for a United States employer(s) or
> entity(ies) at a professional level, and that the applicant meets
> the criteria to perform at such a professional level. This
> documentation may be in the form of a letter from the prospective
> employer(s) in the United States or from the foreign employer,

---

[10] *See generally,* North American Free Trade Agreement, Can.-Mex.-U.S., Dec. 17, 1992, 32 I.L.M 289 (1993).

[11] *See* 8 C.F.R. § 214.6(a).

[12] *See* 8 C.F.R. § 216.4(c) (incorporating Appendix 1603.D.1 to Annex 1603 of the NAFTA).

and must be supported by diplomas, degrees or membership in a professional organization…The documentation shall fully affirm:

(A) The [TN] profession of the applicant;

(B) A description of the professional activities, including a brief summary of daily job duties, if appropriate, in which the applicant will engage in for the United States employer/entity;

(C) The anticipated length of stay;

(D) The educational qualifications or appropriate credentials which demonstrate that the … Mexican citizen has professional level status; and

(D) The arrangements for remuneration for services to be rendered.[13]

57.     The TN visa applicant "must engage in a prearranged business activity at a professional level for a U.S. or foreign employer."[14]

58.     Once an applicant has provided the required evidence set forth in the preceding paragraph, the applicant is admitted under the TN visa classification for a period of up to three years.[15]

---

[13] *See* 8 C.F.R. § 214.6(d)(3)(ii).
[14] *See* 9 F.A.M. § 402.17-5(A).
[15] *See* 8 C.F.R. § 214.6(e).

59.     The TN visa is tied to the associated employer for the duration of the TN visa period unless the TN visa holder submits a verified petition to USCIS seeking to add or change employers.[16]

60.     Since 1997, the number of TN visas issued has increased significantly every year, except for 2020 due to the COVID-19 pandemic. For example, in 1997, 287 TN visas were issued to Mexican nationals.[17] By 2007, the number had increased to 4,060.[18] In 2017, it had grown to 15,993 visas.[19] In 2021, 24,881 TN visas were issued to Mexican nationals.[20]

---

[16] *See* 9 F.A.M. § 402.17-5(A)(7) (the petitioner must file a Form I-129, Petition for Nonimmigrant Worker).

[17] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 1998), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY1998_NIV_Detail_Table.pdf (last viewed March 25, 2022).

[18] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2007), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY07NIVDetailTable.pdf (last viewed March 25, 2022).

[19] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2017), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY17NIVDetailTable.pdf (last viewed March 25, 2022).

[20] *See* Nonimmigrant Visas Issuances by Visa Class and Nationality, U.S. Department of State (FY 2021), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY21NIVDetailTable.pdf (last viewed Oct. 23, 2022).

61.     Oversight of TN visa holders' working conditions in the United States is largely unregulated. As a consequence, there have been multiple reports of abuses—including misrepresentations in employment contracts—of TN workers,[21] as well as several lawsuits.[22]

### b. The RICO Fraud

62.     The acts and omissions described in paragraphs 63-134, and 150-205, *infra*, were committed by Defendants SMART, AGWM, WK Law Group, and Woon Kim through the RICO enterprise (as defined in paragraphs 150-202, *infra*) ("RICO Enterprise").

63.     Sometime before January 2020, SMART associated with AGWM to recruit employees through the TN visa program for positions as production assembly line laborers at SMART.

64.     Knowing that production line manual labor job positions did not qualify for the TN visa program, SMART and AGWM agreed to recruit highly qualified Mexican national engineers (who due to their engineering

---

[21] *See* Coerced under NAFTA: Abuses of Migrant Workers in the TN visa Program and Recommendations for Reform, Centro de los Derechos del Migrante (Dec. 2017), https://cdmigrante.org/wp-content/uploads/2018/01/Coerced-under-NAFTA_-Abuses-of-Migrant-Workers-in-TN-Visa-Program.pdf (last viewed March 25, 2022).

[22] *See, e.g., Martinez-Rodriguez v. Giles*, 31 F.4th 1139 (9th Cir. 2022); *Castellanos v. Wordlwide Distribution Sys. USA, LLC,* No. 2:14-CV-12609, 2016 WL 11678220, at *8 (E.D. Mich. June 20, 2016)

qualifications qualified for the TN visa program) with fake job offers for engineering positions.

65.     The scheme was a bait and switch:  hire highly qualified engineers for non-existent technical engineering positions; secure TN visas based on the promise of employment in the highly technical engineering positions; and once the TN visa is issued and the Mexican national has travelled to America, complete the bait and switch by requiring the Mexican national to work as a production assembly line laborer.

66.     In furtherance of the scheme, AGWM posted a job in January 2020 on the BUMERAN website, a Hispanic job posting site, which was seen by Plaintiff.

67.     On or about January 23, 2020, Plaintiff applied for the position, which included submitting his resume in Spanish.

68.     On January 23, 2020, Ana Maria Rodriguez of AGWM sent Plaintiff an email confirming receipt of his resume for the position of a Quality Control Engineer in the southeastern United States and instructing him to resubmit his resume in English.

69.     On September 13, 2020, Plaintiff completed the required AGWM form, which listed SMART as the employer, and emailed it to AGWM.

70.    On September 15, 2020. Plaintiff had a Skype interview with SMART Employee Relations Specialist Cynthia Rios and a SMART Assembly Department Manager.

71.    During the interview, Ms. Rios told Plaintiff he would be eligible and sponsored for a green card after 18 months if he worked with SMART.

72.    During the interview, Ms. Rios knew, and intentionally omitted, the material facts that:

   a. SMART would misrepresent to the U.S. government that Plaintiff's job would be Industrial Quality Engineer;

   b. this misrepresentation to the U.S. government would impact Plaintiff's future eligibility for a green card; and

   c. the misrepresentations to the U.S. government would serve as a bar to Plaintiff's entry into the United States.

73.    During the interview, Ms. Rios knew, and intentionally omitted, the material fact that (1) a TN visa is a non-immigrant visa; (2) someone entering the United States on a TN visa cannot have immigrant intent; and (3) therefore, the promise of green card sponsorship was incompatible with the TN visa.

74.     The conduct of these interviews was determined through a decision-making process between SMART and AGWM in which representatives of both entities provided input.

75.     Ms. Rios used the false green card promise to bait Plaintiff into continuing forward with the TN visa application process.

76.     On September 15, 2020, Julian Kim sent an email to Plaintiff on behalf of SMART, which stated, among other things,

    a.     Plaintiff was selected for a position at SMART;

    b.     Plaintiff should review the attached job offer, sign it, and email it to WK Law as soon as possible; and

    c.     after Plaintiff sent the signed job offer, WK Law and Woon Kim would send an email requesting additional documents that were necessary for the visa application.

77.     Mr. Kim's email also represented that AGWM was seeking to fill at least 61 positions for SMART.

78.     At the time Julian Kim sent the email described in paragraphs 76 and 77, he had Defendant SMART's express authority to make those statements.

79.     The job offer letter Plaintiff received on September 15, 2020, was signed by SMART Administration General Manager Gary Sport.

17

80.     In the letter, Mr. Sport stated:

> I am pleased to offer you an employment as Quality
> Engineer at SMART Alabama, LLC. I am confident that
> your academic background and professional knowledge
> will be a valuable asset to the growth of this company's
> business in the US. Per our agreement, the terms and
> conditions of your employment shall be as the following:
>
> • Job Title: Quality Engineer
> • Position: Up to 1 year from September 21, 2020, but
> contingent upon the approval of TN visa by the US
> consulate
> • Purpose: Annual salary of $38,000.00 (Full Time,
> based on the terms and conditions).

*See* Ex. B.

81.     SMART's offer letter was for a job that would have utilized
Plaintiff's considerable engineering education, skills, and experience, and
therefore would qualify for a TN visa.

82.     At the time Defendants SMART, AGWM, WK Law, and Woon
Kim sent the offer letters to Plaintiff and other engineers, Defendants knew
they were not hiring them to work as engineers, but rather as production line
laborers.

83.     Plaintiff would not have been eligible for a TN visa if the
operative job offer was for employment as a production assembly line laborer.

18

84.     Plaintiff accepted the job offer and moved forward with the immigration process in reliance on the terms, including the misrepresentations, in the offer letters.

85.     Defendants SMART, AGWM, WK Law, and Woon Kim caused the correspondence including information, applications, and offer letters to be transmitted to Plaintiff and other Mexican engineers through the mail and/or wires.

86.     At the time SMART and AGWM provided the job offer to Plaintiff, SMART and AGWM knew that Plaintiff would not be hired as a Quality Engineer and that he instead would be hired as a SMART production assembly line laborer.

87.     At the time SMART and AGWM provided the job offer letter to Plaintiff, they knew the job position he offered was as an hourly, rather than a salaried employee.

88.     At the time SMART and AGWM provided the job offer letter to Plaintiff, they knew he would be paid much less than the $19.00 per hour equivalent ($38,000 / 2000 annual hours = $19.00) of a full-time $38,000 per year salary.

89.     On September 15, 2020, Defendants WK Law and Woon Kim, in coordination and as part of a decision-making process with SMART and AGWM, sent Plaintiff an email that:

   a. introduced him as the attorney who would help him obtain a TN visa to work for SMART;

   b. referenced an attached "basic document list" and asked Plaintiff to send the listed documents;

   c. referenced an attached "questionnaire form" and asked Plaintiff to answer the questions on the form;

   d. informed Plaintiff of the consular interview process; and

   e. described the process to pay the U.S. Government fee of $160 for processing the TN visa.

90.     Though Woon Kim and WK Law are based in Duluth, Georgia, Woon Kim is not licensed to practice law in Georgia.

91.     On September 17, 2020, Plaintiff transmitted the requested questionnaire and supporting documents and information by email to Woon Kim and exchanged additional emails with him related to the supporting documents.

92.     Plaintiff also paid the U.S. Government visa processing fee of $160 on or shortly after September 17, 2020.

93.     Plaintiff paid the visa processing fee and moved forward with the immigration process in reliance on the fraudulent misrepresentations of SMART, AGWM, WK Law, and Woon Kim that he was being hired for a technical position as Quality Engineer and would be paid pursuant to the terms of the job offer.

94.     Woon Kim, Ellie Kim (an employee of WK Law), and Plaintiff exchanged emails about the consular interview process and scheduling that interview on September 30, 2020 and October 1, 2020.

95.     On October 1, 2020, Woon Kim sent Plaintiff an email that included:

    a. a letter signed by Woon Kim to the U.S. Consulate in Guadalajara, Mexico with attached documents purportedly supporting Plaintiff's TN visa application;

    b. a DS-160 form, which Woon Kim indicated Plaintiff should use for consular interview preparation but should not bring to the interview;

    c. a position description sheet, which Woon Kim also indicated Plaintiff should use for consular interview preparation but should not bring to the interview, and which listed the duties of an

Industrial Quality Engineer at SMART, but did not include work as a production assembly line worker; and

d.  an interview preparation sheet, which Woon Kim also indicated Plaintiff should use for consular interview preparation but should not bring to the interview. The preparation sheet:

e.  instructed Plaintiff to inform the consular official that he intended to return to Mexico after completing the work and specifically indicated he should not say he would apply for permanent residency (green card) in the United States;

f.  informed Plaintiff his application would be denied if he indicated he intended to apply for a green card; and

g.  informed Plaintiff that it is not necessary to provide all information, and that he should only answer the consular officer's questions.

96.  These emails and attachments were drafted through a decision-making process between SMART, AGWM, WK Law, and Woon Kim in which representatives of each of these entities provided input.

97.  At the time WK Law and Woon Kim sent the email and attachments described in paragraphs 89 and 94-96, they were acting with the express authority of SMART and AGWM.

98.    At the time Woon Kim sent the email and attachments described in paragraphs 89 and 94-96, he had an attorney-client relationship with Plaintiff.

99.    Plaintiff had a good faith basis for relying on Woon Kim's legal advice.

100.    At the time Woon Kim sent the email and attachments described in paragraphs 89 and 94-96, Woon Kim knew:

    a. Plaintiff would not work at SMART as Industrial Quality Engineers, but rather would work as a laborer on the production assembly line;

    b. SMART and AGWM had informed Plaintiff that he would be sponsored for a green card after working at SMART for 18 months;

    c. The TN visa is (1) non-immigrant visa; (2) someone entering the United States on a TN visa cannot have immigrant intent; and (3) therefore, the promise of green card sponsorship was incompatible with the TN visa;

    d. any misrepresentations made to the U.S. government would likely make Plaintiff ineligible for green cards; and

> e. the misrepresentations to the U.S. government would serve as a bar to Plaintiff's entry into the United States.

101. In the communications with Plaintiff described herein, Woon Kim did not use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks which they undertake.

102. Also on October 1, 2020, Woon Kim sent a second email to Plaintiff which included as an attachment SMART's Support Letter supporting his TN visa application.

103. The Support Letter for Plaintiff was signed on October 1, 2020 by SMART Administration General Manager Gary Sport, and was addressed to the Acting Nonimmigrant Visa Section Chief of the United States Consulate in Guadalajara, Jalisco, Mexico.

104. The Support Letter for Plaintiff included several fraudulent misrepresentations, including that:

> a. Plaintiff would work "as an Industrial Quality Engineer in our Production Department at our facilities in Luverne, Alabam [*sic*]";
>
> b. Plaintiff would perform as an Industrial Quality Engineer, with duties including, but not limited to: "evaluate the production

line…"; "assess and analyze the quality of incoming materials,
raw materials, manufactured products, supplies, and final
product to ensure it meets the engineering and quality
specifications";  "Oversee production in both the Assembly Line
and Press Line to perform quality check, inspect conformity to
procedure and identify any discrepancies in process/protocols…";
"Document the details of the test results and report the findings
to the upper management;" "Adjust test plans or methods in
accordance to the existing and upcoming production model…";
"Perform supplier assessments…"; and "Periodically review client
complaints…";

c. Plaintiff's salary would be $38,000 annually;

d. SMART had "verified Jaime Obregon Acosta's intent to return to
Mexico at the completion of his proposed assignment";

e. The duties of the job offered to Plaintiff "and the very nature of
SMART services require that a candidate possess a bachelor's
degree in Industrial Engineering, Quality Engineering,
Mechanical Engineering, or an engineering-related field," and
"SMART typically requires this educational credential as a
minimum requirement for entry into this occupation"; and

25

> f. Woon Kim of WK Law was SMART's "attorney in this matter."

*See* Ex. C.

105. At the time SMART, through its association with AGWM, WK Law, and Woon Kim, submitted the Support Letter for Plaintiff, Gary Sport and other SMART and AGWM personnel who authorized the letters knew Plaintiff would not be employed as an engineer at SMART. Rather, they knew:

> a. Plaintiff would work as a production assembly line worker;
>
> b. Plaintiff would perform work that was identical to other employees with no engineering training or credentials;
>
> c. engineering training and credentials were not required or necessary to perform the production assembly line work; and
>
> d. they had not verified Plaintiff's intent to return to Mexico at the completion of his assignment (on the contrary, they had promised to sponsor them for green cards); and
>
> e. Plaintiff's salary would not be $38,000 annually.

106. Plaintiff moved forward with the immigration process in reliance on the false representations in the Support Letter.

107.   Defendants SMART, AGWM, WK Law, and Woon Kim caused the correspondence making misrepresentations concerning the job offered to Plaintiff to be transmitted through the mail and/or wires.

108.   In reliance on the misrepresentations by SMART, AGWM, WK Law, and Woon Kim, Plaintiff (a) paid a visa processing fee to the U.S. government; and (b) paid for travel expenses from Mexico to the U.S. Consulate for his consular interview.

109.   The U.S. Government, relying on the misrepresentations by SMART, AGWM, WK Law, and Woon Kim in the Support Letter, issued a TN visa to Plaintiff.

110.   On October 2, 2020, "Daniela" from AGWM sent Plaintiff a message on WhatsApp informing him that his TN visa had been approved.

111.   Defendants Woon Kim and WK Law provided legal representation to Plaintiff for the purpose of securing TN visas for SMART employees.

112.   At the time WK Law and Woon Kim provided legal representation to Plaintiff, they were acting in concert and association with SMART and AGWM for the common purpose of recruiting Plaintiff to work for SMART, and all their acts and omissions occurred through this association.

113.   After receiving his TN visa, Plaintiff traveled from Mexico to Alabama to work at SMART based on the false job offer and fraudulent misrepresentations set forth above.

114.   Plaintiff worked at SMART from October 2020 until June 2021.

115.   Plaintiff never worked as a Quality Engineer at SMART.

116.   SMART did not pay Plaintiff a salary of $38,000 per year for full-time employment.

117.   SMART paid Plaintiff less than similarly situated American workers who did not even have the qualifications he had.

118.   After returning to Mexico following his employment at SMART, Plaintiff applied for a new TN visa to enter the United States for employment as a Project Engineer with INGENICS at the Mercedes Benz manufacturing plant in Alabama.

119.   In August 2021, the U.S. Government denied Plaintiff's TN visa application because the government claimed his TN visa for employment at SMART was obtained through fraud or other material misrepresentations.

120.   The U.S. Government denied Plaintiff's visa application specifically and solely because of the misrepresentations about the nature of the work Plaintiff would perform at SMART.

121.   As a result of the TN visa denial, INGENICS withdrew Plaintiff's job offer, and he remained in Mexico looking for employment.

122.   In December 2021, a German-American automotive supplier in Mexico hired Plaintiff.

123.   Plaintiff had to renew his previously expired B1/B2 visa for this new job.

124.   The B1/B2 visa was required because of the transnational nature of the work.

125.   In March 2022, the U.S. Government denied Plaintiff's B1/B2 visa application for the same reason it had denied his TN visa application.

126.   The same legal basis the U.S. Government provided when it denied Plaintiff's visa applications is also a basis to deny future applications for U.S. work visas, visitor visas, and/or a green card.

127.   But for Defendants' misconduct, Plaintiff would not have been denied the TN and B1/B2 visas as described above, and the U.S. government would not have this basis for denying a future application for a work visa, visitor visa, or green card.

128.   Wages for mechanical engineers and quality assurance engineers in Mexico are significantly lower than wages for the same professions in the United States.[23]

129.   Plaintiff's wages at his current employer are lower than the wages he would have received if he were able to legally enter the United States.

130.   Because Plaintiff was not able to return to the United States, a vehicle in the United States, which he was financing, was repossessed, and his initial investment in the vehicle was lost.

131.   Plaintiff suffered pecuniary losses that were directly and proximately caused by Defendants' fraudulent scheme, including, but not limited to:

    a.   Travel costs to and from the U.S. Consulate for the mandated interview;

    b.   U.S. Government visa processing fees of $160 per visa;

---

[23] *Compare, e.g.,* Average Quality Assurance (QA) Engineer Salary: Mexico, Payscale (Jan. 20, 2022), https://www.payscale.com/research/MX/Job=Quality_Assurance_(QA)_Engineer/Salary (median salary for QA engineer in Mexico is 240,000 Mexican pesos (MXN) per year, or approximately $11,214 U.S. dollars), *with* Average Quality Assurance (QA) Engineer Salary: United States, Payscale (June 15, 2022), https://www.payscale.com/research/US/Job=Quality_Assurance_(QA)_Engineer/Salary (median salary for QA engineer in the U.S. is $72,856 USD per year).

    c.  Unreimbursed expenses for travel to the U.S. to work for SMART;

    d.  Costs to purchase essential furniture and household goods upon arrival at housing provided by SMART;

    e.  Lower wages than what Defendants fraudulently promised during the recruitment process;

    f.  Lost personal possessions; and

    g.  Lost economic opportunities he would have had if the promise of green card sponsorship had not been fraudulent.

132.  Plaintiff suffered other damages, including but not limited to emotional distress and reputational harm, directly and proximately caused by the breach of duties owed to him by WK Law and Woon Kim.

133.  Defendants SMART, AGWM, WK Law, and Woon Kim engaged in hundreds of similar separate fraudulent acts for the purpose of recruiting and employing dozens of Mexican TN visa holders beginning as early as January 2020, and each of them suffered similar pecuniary damages.

134.  The fraudulent scheme described herein thus became a regular way of conducting the businesses of Defendants SMART, AGWM, WK Law, and Woon Kim.

### c.  <u>Employment Discrimination</u>

135.   SMART employed both Hispanic Mexican citizens ("Mexican workers") and white and black U.S. citizen workers ("U.S. workers") performing similar work on SMART's production line.

136.   The Mexican workers with TN visas were paid an hourly wage rate that was significantly lower than the hourly wage rate paid to the U.S. workers.

137.   Mexican workers without TN visas also were paid an hourly wage that was significantly lower than the hourly wage rate paid to the U.S. workers.

138.   The Mexican workers were required to work significantly longer hours than the U.S. workers.

139.   Plaintiff and similarly situated Mexican workers were denied the position of Quality Control Engineer, Industrial Quality Engineer, Quality Engineer, and all other engineer positions based solely on their race and national origin.  The denial of these positions resulted in substantially lower wages to Plaintiff and other similarly situated Mexican workers.

140.   Plaintiff complained of the discriminatory treatment.

141.   SMART subjected Mexican workers with TN visas to disciplinary action that was more frequent and more severe than disciplinary action directed at the U.S. workers.

142.   SMART's disparate treatment of the Mexican workers as compared to the U.S. workers who performed the same or similar work constituted discrimination based on race and ancestry, in violation of 42 U.S.C. § 1981.

143.   SMART's disparate treatment of the Mexican workers as compared to the U.S. workers who performed the same or similar work constituted discrimination based on race, color, and national origin, in violation of Title VII.

### d.  Failure to Pay Required Overtime Wages

144.   Plaintiff and other similarly situated TN visa holders regularly worked at SMART's operations in excess of 40 hours per week ("overtime") for the duration of their employment, including during the first two months of employment.

145.   During Plaintiff's and other similarly situated TN visa holders' first two months of employment, SMART provided them with hotel accommodations and a rental car.

146.   As set forth in a September 12, 2020 email received by Plaintiff, the hotel accommodations and transportation assistance were regarded as part of Plaintiff's and other similarly situated workers' compensation.

147.   When calculating overtime wages, SMART did not include in the regular rate of pay the reasonable cost to SMART or the fair value of the housing and transportation assistance.[24]

148.   Therefore, SMART did not pay Plaintiff and other similarly situated TN visa holders overtime wages at a rate of one-and-one-half their regular rate of pay, as required by the FLSA.[25]

149.   The actions and omissions alleged above were willful in that SMART was aware of its obligations regarding overtime wages, showed reckless disregard for whether its conduct violated the FLSA, or acted without a reasonable basis to believe its actions were in compliance with the FLSA.

VI.   **RICO Violations**

a.  **RICO Enterprise**

150.   Plaintiff pleads the existence of a RICO Enterprise as set forth below.

151.   At all relevant times, the RICO Enterprise engaged in, or its activities affected, interstate and/or foreign commerce.[26]

---

[24] *See* 29 C.F.R. § 778.116.
[25] *See* 29 U.S.C. § 207(a).
[26] *See* 18 U.S.C. 1962(c).

152.   Defendants SMART, AGWM, WK Law, and Woon Kim were an enterprise within the meaning of RICO in that they were associated in fact although not a legal entity.[27]

153.   The RICO Enterprise was an ongoing organization with a framework, either formal or informal, for carrying out its common purpose.

154.   The association comprising the RICO Enterprise began as early as January 2020 and has resulted in fraud upon Plaintiff and/or attempted over 40 other foreign workers recruited from Mexico to work for SMART.

### i.   *Association-in-Fact*

155.   The RICO Enterprise members associated with each other for the common purpose of recruiting Mexican engineers for and employing Mexican engineers on Defendant SMART's production line.

156.   SMART agreed with AGWM for AGWM to recruit foreign workers to work as laborers on SMART's production line.

157.   SMART also agreed with WK Law and Woon Kim that they would provide legal advice to foreign workers and submit documents on their behalf to secure TN visa status for them to work at SMART.

---

[27] *See id.*

158.   SMART, AGWM, WK Law, and Woon Kim knew that TN visas would not and could not be granted for workers working manual labor positions such as the production line laborer position that SMART wanted filled.

159.   Knowing that TN visas would be granted only for highly skilled foreign workers for high-skilled job positions, SMART, AGWM, WK Law, and Woon Kim agreed that SMART and AGWM would recruit high skilled Mexican and Hispanic engineers that satisfied the TN visa requirements; (2) SMART and AGWM would misrepresent the production line labor positions (which did not qualify for TN visas) as high-skilled engineering job positions (which did qualify for TN visas); and (3) WK Law and Woon Kim would provide legal advice to the engineers and prepare and submit fraudulent documentation to the U.S. Government to secure TN visa status enabling them to come to work for SMART.

160.   The plan continued with AGWM qualifying Plaintiff and other candidates and checking their educational background and engineering skills before organizing zoom interviews with SMART.

161.   As of September 2020, AGWM had agreed to fill at least 61 positions for SMART.

162.   The plan continued with SMART during the interview confirming that Plaintiff and other foreign workers were in fact highly skilled and highly educated and concealing the nature of the job positions available for Plaintiff and other foreign workers.

163.   The plan continued with SMART and AGWM further providing fraudulent job offers to Plaintiff and other foreign workers that mispresented the job positions, duties, and pay so that the job positions met the requirements for TN visas and so that Plaintiff and other foreign workers would accept the job positions and apply for TN visas.

164.   The plan continued with SMART and AGWM providing fraudulent TN visa Support Letters to Plaintiff and other foreign workers upon the acceptance of the job offers.

165.   The plan continued with SMART and AGWM and WK Law and Woon Kim agreeing that WK Law and Woon Kim would provide legal advice to Plaintiff and other workers relating to the TN visa application process.

166.   Pursuant to the plan, WK Law and Woon Kim concealed from Plaintiff that the offer letters were fraudulent, the Support Letters were fraudulent, and that the TN visa application was fraudulent.

167.   At the time that SMART, AGWM, WK Law, and Woon Kim provided the fraudulent TN visa Support Letters to Plaintiff and other

foreign workers, they knew that the letters included false descriptions of the job positions available for Plaintiff and other workers, false descriptions of the pay to Plaintiff and other foreign workers, and other false information.

168.   The fraudulent TN visa Support Letters were directed to the United States consulate and were part of the scheme to commit visa fraud engaged in by SMART, AGWM, WK Law, and Woon Kim.

### ii.   *Each of Defendants Participated in the Operation and Management of the Enterprise's Affairs*

169.   SMART and AGWM participated in the management of the enterprise's affairs.

170.   SMART and AGWM agreed through a mutual decision-making process that AGWM would post job announcements for positions of employment at SMART which would, by reason of the education, experience, and skill required, qualify the successful applicant to obtain a TN visa.

171.   AGWM and SMART agreed to provide information concerning the positions at SMART to individuals who responded to the announcements it had posted for SMART.

172.   AGWM developed a strategy to recruit foreign workers who may be qualified for the TN visa, including by identifying appropriate websites or

and other locations in which to post announcements for jobs at SMART that may be seen and responded to by qualified Mexican nationals.

173.   AGWM then executed that strategy, communicating with Plaintiff and other potential targets of the fraud scheme to screen them for employment with SMART, checking their educational background and engineering qualifications, and qualifying them for interviews.

174.   AGWM provided specific information, including interview dates, about an interview with SMART personnel to candidates to facilitate them interviewing with SMART personnel.

175.   SMART interviewed the candidates recruited by AGWM, and participated in deciding which would be offered employment at SMART.

176.   After SMART decided which candidates to hire, SMART coordinated with AGWM to provide those candidates with job offers, which AGWM did.

177.   SMART prepared Support Letters for hired candidates.

178.   AGWM provided the Support Letters prepared by SMART to the U.S. Consulate on behalf of itself and SMART and the hired candidates.

179.   SMART and AGWM associated with WK Law and Woon Kim to knowingly offer Plaintiff and other similarly situated Mexican workers jobs that they knew did not exist.

180.   The plan continued with WK Law and Woon Kim preparing documents and information designed to lead Plaintiff and others to make misrepresentations in order to secure a TN visa, and WK Law and Woon Kim then delivered those documents and information to them.

181.   SMART and AGWM associated with WK Law and Woon Kim to provide false information to Plaintiff and others regarding the nature of the job they were offered and instruction on how to fraudulently obtain a TN visa to come to the United States to work for SMART.

182.   SMART, AGWM, and WK Law and Woon Kim made material misrepresentations to the U.S. Government to fraudulently secure TN visas for Plaintiff and others.

### iii.   *The Enterprise Undertook a Pattern of Continuous Coordinated Conduct*

183.   As shown by the fact that Plaintiff viewed an announcement for a job at SMART and received communications from SMART and AGWM in May 2020, the pattern of continuous coordinated conduct by the RICO Enterprise began in January 2020.

184.   AGWM represented that it was seeking to fill at least 61 positions for SMART.

185.   SMART and AGWM continued to recruit Mexican nationals to work at SMART with TN visas until the time of the filing of the original Complaint. SMART and AGWM continue their illegal scheme by continuing to employ workers under the TN visa program that are highly skilled but employed in manual labor low-skilled positions.

186.   The TN visa is tied to the associated employer for the duration of the TN visa period, unless the TN visa holder submits a verified petition to USCIS seeking to add or change employers. 9 F.A.M. § 402.17-5(A)(7) (the petitioner must file a Form I-129, Petition for Nonimmigrant Worker). Thus, SMART's continued employment of the TN visa holders threatens future fraud against the U.S. Government when these visas are renewed at the end of the three-year visa period.

187.   SMART, AGWM, WK Law, and Woon Kim recruited over 40 foreign workers under the TN visa program under this scheme to advertise false job openings, make false job offers, submit false TN visa Support Letters, and induce the foreign workers to come to the United States for non-existent jobs.

41

### iv.     *The Enterprise Engaged in Racketeering Activity through Numerous Predicate Acts of Fraud*

188.   As part of a scheme or artifice to defraud, Defendants SMART, AGWM, WK Law, and Woon Kim caused to be transmitted by mail and/or wires the job announcements used to recruit candidates like Plaintiff for employment with SMART.

189.   The job announcements contained material misrepresentations upon which Plaintiff and others relied to their detriment, constituting violations of 18 U.S.C. § 1341 and/or § 1343.

190.   As part of a scheme or artifice to defraud, Defendants SMART and AGWM caused to be transmitted by mail and/or wires the offer letters which offered employment with SMART to Plaintiff and others.

191.   The offer letter contained material misrepresentations upon which Plaintiff and others relied to their detriment, constituting a violation of 18 U.S.C. § 1341 and/or § 1343.

192.   As part of a scheme or artifice to defraud, Defendants SMART and AGWM caused to be transmitted by mail and/or wires statements of fact to the U.S. Government regarding the jobs to be performed by Plaintiff and others.

42

193.   Defendants SMART and AGWM made material misrepresentations in the statements of fact submitted to the U.S. Government, and the U.S. Government relied on those statements in issuing TN visas to Plaintiff and others, constituting violations of 18 U.S.C. § 1341 and/or § 1343, and 18 U.S.C. § 1546.

194.   Defendants SMART and AGWM each knowingly and with the intent to defraud recruited, solicited, and hired Plaintiff and other foreign workers for purposes of employment by means of false and fraudulent pretenses, representations and promises regarding the employment, in violation of 18 U.S.C. § 1351.

195.   SMART, in association with AGWM, knowingly and with the intent to defraud, recruited, solicited, and hired Plaintiff and other foreign workers for purposes of employment by means of false and fraudulent pretenses, representations and promises regarding the employment, in violation of 18 U.S.C. § 1351.

196.   Woon Kim and WK Law, in coordination with SMART and AGWM, prepared the TN visa applications for Plaintiff and other foreign workers that knowingly included false statements, and that included and relied on the fraudulent TN visa Support Letter, in violation of 18 U.S.C. § 1351.

43

197.   Woon Kim and WK Law, in coordination with SMART and AGWM, knowingly and with the intent to defraud recruited Plaintiff and other foreign workers for purposes of employment by means of false and fraudulent pretenses, representations and promises regarding the employment, in violation of 18 U.S.C. § 1351.

198.   Woon Kim and WK Law, in coordination with SMART and AGWM, made false attestations and provided fraudulent Visa Support Letters to the United States government relating to Plaintiff and other foreign worker TN visa applications for purposes of committing visa fraud in violation of 18 U.S.C. § 1546.[28]

>    **v.**   ***Plaintiff Suffered Pecuniary Injury Directly and Proximately Caused by the Pattern of Racketeering Activity Engaged by the Enterprise***

199.   SMART, AGWM, Woon Kim, and WK Law induced Plaintiff and other foreign workers to unknowingly pay for and apply for a fraudulent TN visa, to travel to the United States for a job that did not exist, and to accept employment at terms that were less than promised.

---

[28] *See e.g., U.S. v. Wu*, 20-10273, 2022 WL 4461376, at *3 (9th Cir. Sept. 26, 2022).

200.   SMART did not pay Plaintiff and others a salary of $38,000 per year for regular full-time employment.

201.   Plaintiff and other TN visa foreign workers suffered pecuniary losses that were directly and proximately caused by the fraudulent job posting for a position with SMART, the application and related information provided to them by Defendants SMART and AGWM, the offer letter provided to them by Defendants SMART and AGWM, and the Support Letter provided to them for submission to U.S. Consulate by SMART, AGWM, Woon Kim, and WK Law, and the resulting TN visas issued to them, including but not limited to:

     a. Travel costs to and from the U.S. consulate for the mandated interview;

     b. U.S. Government visa processing fees of $160 per visa;

     c. Unreimbursed expenses for travel to the U.S. to work for SMART;

     d. Costs to purchase essential furniture and household goods upon arrival at housing provided by SMART;

     e. Lost wages in the form of the difference between the wages promised and the lower wages actually paid; and

    f.  Lost economic opportunities they would have had if the promise of green card sponsorship had not been fraudulent.

202.   These pecuniary losses and others would not have been suffered but for the material misrepresentations made to Plaintiff and others as part of the scheme to defraud them and the U.S. Government to recruit Plaintiff and others for jobs that did not exist.

### b. <u>The RICO Conspiracy</u>

203.   Plaintiff pleads the existence of a RICO Conspiracy.

204.   Defendants AGWM, WK Law, and Woon Kim conspired with Defendant SMART by adopting the goal of furthering and participating in the objectives of the RICO Enterprise to engage in a fraudulent scheme.[29]

205.   Defendants SMART, AGWM, WK Law, and Woon Kim agreed that AGWM would post multiple fraudulent job announcements using wires; that SMART, AGWM, WK Law, and Woon Kim would send multiple fraudulent job offers to multiple different candidates; and that SMART and WK Law and Woon Kim would send fraudulent Support Letters to Plaintiff and others and the U.S. Government, which constitute multiple predicate acts of mail and/or wire fraud in violation of <u>18 U.S.C. § 1341</u> and/or § 1343,

---

[29] *See Id.*

labor contracting fraud in violation of 18 U.S.C. § 1351, and misuse of visas in violation of 18 U.S.C. § 1546.

### c. Rule 23 Class Allegations

### i. The RICO Class.

206. Plaintiff brings his state and federal RICO claims against Defendants SMART, AGWM, WK Law, and Woon Kim as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of himself and a class of persons (the "RICO Class") consisting of:

> All individuals who, between March 28, 2018, and the present, (1) were recruited by AGWM, (2) received wages from SMART; and (3) were TN visa holders.

207. Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the Class period have had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Classes.

### *Numerosity*

208. There are over 40 individuals who would be members of the Class based on the number of individuals with TN visas hired to work at SMART and the number of positions at SMART that one of the recruitment agencies represented it was attempting to fill.

209.   The members of the Class are sufficiently numerous that joinder of all members is impractical.

## *Existence and Predominance of Common Questions*

210.   Common questions of law and fact exist as to Plaintiff and members of the Class and predominate over questions affecting only individual Class members.

211.   These common questions include:

a.   whether the Defendants—through the RICO Enterprise— committed a pattern of racketeering activity causing Plaintiff and other TN visa holders to suffer pecuniary losses;

b.   Whether Defendants conspired to violate RICO;

c.   The nature and extent of class-wide injury and the measure of damages for state and federal RICO violations; and

d.   Whether, if Plaintiff sustained actual damages for state and federal RICO violations, Defendants acted with gross fraud, wantonness, maliciousness, and/or the willful disregard of the rights of others.

## *Typicality*

212.   Members of the Class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

213.   Plaintiff and the Class members have the same statutory rights under federal and state RICO.

214.   Plaintiff and the Class were recruited and employed under the same or similar circumstances giving rise to the same claims.

215.   Plaintiff and the Class members suffered similar types of pecuniary damages.

216.   Plaintiff and the Class members suffered similar types of economic and non-economic compensatory damages.

217.   Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff (a) was a TN visa holder; (b) is a Hispanic Mexican national; and (c) was an employee who worked for SMART and suffered the same violations as the proposed Class members.

218.   Plaintiff's interests are co-extensive with the interests of the Class members; Plaintiff has no interest adverse to the Class members.

### *Adequacy*

219.   Plaintiff will fairly and adequately represent the interests of the Class members. His interests do not conflict with the interests of the members of the Class he seeks to represent.

220.   Plaintiff understands that, as Class representatives, he assumes a responsibility to the Class to represent its interests fairly and adequately.

221.   Plaintiff has retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiff and his counsel will not vigorously pursue this matter.

### *Superiority*

222.   A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

223.   The damages suffered by each individual Class member may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual control or prosecution of the litigation.  Plaintiff is unaware of any difficulties managing this lawsuit as a class action, and it is desirable to maintain this class action in the present forum.  Plaintiff is unaware of any litigation already begun concerning this controversy.

224.   Further, it would be difficult for members of the Class to obtain individual redress effectively for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and Defendants.

225.   Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

226.   By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

227.   This case does not present individualized factual or legal issues which would render a class action difficult.

228.   In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## ii.   The Contract and Discrimination Class.

229.   Plaintiff brings his contract and discrimination claims as a class action pursuant to Fed. R. Civ. P. 23(b)(3) against Defendant SMART on behalf of himself and a class of persons (the "Contract and Discrimination Class") consisting of:

> All individuals of Mexican National Origin and Hispanic Race and who are not United States Citizens and are Citizens of Mexico, and who between March 28, 2018, and the present, (1) were employed and received wages from SMART; and (2) were TN visa holders.

230.   Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the Class periods have had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Classes.

### *Numerosity*

231.   There are over 40 individuals who would be members of the Class based on the number of individuals with TN visas hired to work at SMART and the number of positions at SMART that one of the recruitment agencies represented it was attempting to fill.

232.   The members of the Class are sufficiently numerous that joinder of all members is impractical.

### *Existence and Predominance of Common Questions*

233.   Common questions of law and fact exist as to Plaintiff and members of the Class and predominate over questions affecting only individual Class members.

234.   These common questions include:

a.   Whether SMART unlawfully discriminated against Plaintiff and other Hispanic Mexican workers (i) by denying them higher paying engineering positions for which they were hired and qualified; and/or (ii) by paying them less than U.S. citizen workers, and/or (iii) by requiring them to work longer hours than U.S. citizen workers, and/or (iii) subjecting to them harsher discipline that U.S. citizen workers;

b.   Whether any actions of SMART in violation of Title VII and/or Section 1981 were undertaken knowingly, willfully, intentionally, and without justification to deprive Plaintiff and other Class members of the rights, and/or whether SMART acted intentionally and with malice or reckless indifference to the federally protected rights of Plaintiff and other Class members; and

c.  The nature and extent of class-wide injury and the measure of damages for violations of Title VII and/or Section 1981;

d.  Whether SMART breached a contractual promise to Plaintiff and others Class members to provide employment with job duties requiring engineering and/or technical education, experience, and skill;

e.  The nature and extent of class-wide injury and the measure of damages for breaches of contract.

### ***Typicality***

235.  Members of the Class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

236.  Plaintiff and the Class members have the same statutory rights under Title VII, Section 1981, and the common law of contract within the meaning of those laws.

237.  Plaintiff and the Class members were recruited and employed under the same or similar circumstances giving rise to the same claims.

238.  Plaintiff and the Class members suffered similar types of pecuniary damages.

239.  Plaintiff and the Class members suffered similar types of economic and non-economic compensatory damages.

240.   Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff (a) was a TN visa holder; (b) is a Hispanic Mexican national; and (c) was an employee who worked for SMART and suffered the same violations as the proposed Class members.

241.   Plaintiff's interests are co-extensive with the interests of the Class members; Plaintiff has no interest adverse to the Class members.

### *Adequacy*

242.   Plaintiff will fairly and adequately represent the interests of the Class members. His interests do not conflict with the interests of the members of the Class he seeks to represent.

243.   Plaintiff understands that, as Class representatives, he assumes a responsibility to the Class to represent its interests fairly and adequately.

244.   Plaintiff has retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiff and his counsel will not vigorously pursue this matter.

### *Superiority*

245.   A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

246.   The damages suffered by each individual Class member may not be sufficient to justify the burden and expense, particularly in light of the

transnational nature of this case, of individual control or prosecution of the litigation.  Plaintiff is unaware of any difficulties managing this lawsuit as a class action, and it is desirable to maintain this class action in the present forum.  Plaintiff is unaware of any litigation already begun concerning this controversy.

247.   Further, it would be difficult for members of the Class to obtain individual redress effectively for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and Defendants.

248.   Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

249.   By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

250.   This case does not present individualized factual or legal issues which would render a class action difficult.

251.   In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would

create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

### d. FLSA Collective Action Allegations

252.   Plaintiff brings FLSA claims on behalf of himself and those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b), who were similarly situated as TN visa employees, and who were not paid required overtime wages between April 7, 2019 and the date of preliminary approval of the opt-in class.

253.   Plaintiff and other TN visa holders were subject to the same policies and practices of SMART.

254.   Common proof applicable to Plaintiff and the other TN visa holders will show that SMART failed to properly pay their overtime wages.

255.   Plaintiff is unaware of the identities of all the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from the SMART's records, and particularly the Ceridian records located, upon information and belief at Ceridian's offices in the Northern District of Georgia.

256.   SMART therefore should be required to provide Plaintiff with a list—including last known addresses, telephone numbers, and email addresses if known—of all individuals who were TN visa holders employed at SMART's operations between April 7, 2019 and the present.

## Count I

### Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 (RICO Class Claim) (Against All Defendants)

257.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

258.   This Count sets forth claims by Plaintiff and other members of the RICO Class against all Defendants for damages resulting from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-68.

259.   Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

260.   Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

261.   The RICO Enterprise, as defined in paragraphs 150-202, *supra*, is an association-in-fact enterprise with the common purpose to recruit, contract, transport, assist in securing TN visas, and employ Mexican TN visa holders to work at SMART's business operations in Alabama.

262.   The RICO Enterprise is engaged in and affects interstate commerce.

263.   The RICO Enterprise functions as a continuing unit.

264.   The Defendants conducted or participated—and/or conspired to do so—in the affairs of the RICO Enterprise, through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and/or 18 U.S.C. § 1962(d), related by their common purpose.

265.   Each of the Defendants also participated in the operation or management of the RICO Enterprise itself, directing the activity of the enterprise.

266.   Specifically, the Defendants conducted or participated—and/or conspired to do so—in the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a. Mail fraud in violation of 18 U.S.C. § 1341;

b.  Wire fraud in violation of 18 U.S.C. § 1343;

c.  Fraud in foreign labor contracting in violation of 18 U.S.C.

    § 1351; and

d.  Visa Fraud in violation of 18 U.S.C. § 1546.

*Predicate Acts*

Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343

267.  As set forth in the preceding paragraphs, the Defendants,

through the RICO Enterprise, made—and/or conspired to make—material

misrepresentations to the U.S. government and to TN visa applicants

regarding the nature of Plaintiff's and other Class members' work, the hours

they would work, and the wages they would receive.

268.  As set forth in the preceding paragraphs, the Defendants, though

the RICO Enterprise, used and/or conspired to use the mails and wire

communications, including communications via telephone, fax, internet,

and/or email, on numerous occasions to further these fraudulent schemes.

269.  These willful, knowing, and intentional acts constitute mail and

wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

Fraud in Foreign Labor Contracting: 18 U.S.C. § 1351

270.  As set forth in the preceding paragraphs, the Defendants,

through the RICO Enterprise, knowingly and with intent to defraud,

recruited, solicited, and hired Plaintiff and other Class members outside the United States—and/or conspired to do so—for the purpose of employment in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding the nature of Plaintiff's and other Class members' work, the hours they would work, and the wages they would receive.

271.   These willful, knowing, and intentional acts constitute fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

### Visa Fraud: 18 U.S.C. § 1546

272.   As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprise, knowingly used, attempted to use, possessed, and received TN visa application documents seeking authorization for Plaintiff and other Class members to work in the U.S. and TN visas issued to those individuals, which were procured by means of false claims or statements, and/or otherwise procured by fraud or unlawfully obtained, and Defendants also knowingly presented false statements in applications, affidavits, and/or other documents in support of such visa applications, knowingly causing the U.S. Government to issue TN visas to Plaintiff and other Class members which would not have been issued but for the false

statements concerning the work to be performed by Plaintiff and others at SMART.

273.   These willful, knowing, and intentional acts constitute fraud and misuse of visas, permits, and other documents in violation of 18 U.S.C. § 1546.  Plaintiff and Class members relied on the fraudulent statements by Defendants to their detriment and would not have submitted the TN visa applications, accepted employment, and traveled to the United States for such employment but for Defendants' fraud.

### Pattern of Related Racketeering Acts

274.   The Defendants engaged in the racketeering activity described in this claim repeatedly in 2019 through the present.

275.   The pattern affected hundreds of individuals, actually accomplishing its fraudulent purposes on the U.S. Government and foreign workers who came to work for SMART on dozens of occasions during the period of the pattern of racketeering acts.

276.   The Defendants, through the RICO Enterprise, rely on the racketeering acts described in this Complaint to conduct their regular business activities.

277.   The Defendants' racketeering acts have or had similar purposes: to profit from the fraud Defendants committed in the contracting, hiring, and employment of Plaintiff and other Class members.

278.   Each of the Defendants' acts yielded similar results and caused similar injuries to Plaintiff and other Class members, including underpayment of wages and lost employment opportunities.

279.   As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the Defendants and their agents.

280.   As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprise, directed their racketeering activities at similar individuals and entities: Plaintiff and other Class members, and federal government agencies.

281.   The Defendants' acts have or had similar methods of commission, such as common recruitment tactics and use of similar employment practices and policies with respect to Plaintiff and other Class members.

### *Conspiracy*

282.   As set forth herein, Defendants conspired to violate the RICO, by agreeing to participate in the objectives of the Enterprise to engage in the pattern of racketeering activity.

283.   As set forth herein, each of the Defendants agreed to commit two predicate acts, including, but not limited to:

a.   SMART directed AGWM to post jobs offers for employment at SMART that contained fraudulent misrepresentations which Plaintiff and others relied upon;

b.   AGWM agreed to post job offers for employment at SMART that contained fraudulent misrepresentations which Plaintiff and others relied upon;

c.   SMART interviewed Plaintiff and others using wires and made fraudulent misrepresentations to them for the purpose of enticing them to apply for employment at SMART which did not exist and was not eligible for a TN visa;

d.   SMART offered employment to Plaintiff and others on the basis of fraudulent misrepresentations, and directed AGWM, WK Law, and Woon Kim to send the offer letters containing fraudulent misrepresentations to Plaintiff and others using mails and/or wires;

e.   AGWM, WK Law, and Woon Kim sent the offer letters containing fraudulent misrepresentations to Plaintiff and others using mails and/or wires;

f.   SMART prepared and submitted Support Letters falsely and fraudulently certifying the nature of the jobs being offered to Plaintiff and others;

g.   SMART submitted the false and fraudulent Support Letters to the U.S. Government for the purpose of defrauding the U.S. Government and inducing it to issue TN visas to Plaintiff and others for jobs that did not qualify for the TN visa program;

h.   SMART directed AGWM, WK Law, and/or Woon Kim to submit the false and fraudulent Support Letter to the U.S. Government for the purpose of defrauding the U.S. Government and inducing it to issue TN visas to Plaintiff and others for jobs that did not qualify for the TN visa program.

### *Injury and Remedies*

284.   As a direct and proximate result of the Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiff and Class members have suffered injuries to their property, including but not limited to visa processing fees, unreimbursed travel expenses, incidental relocation expenses, wage underpayments, lost employment opportunities, and/or other pecuniary losses.

65

285.   Plaintiff and other Class members are entitled to an award of damages in an amount to be determined at trial, including but not limited to:

     a.   compensation for their injuries to their property;

     b.   trebling of the damages set forth in subparagraph (a), *supra*; and

     c.   attorneys' and experts' fees and costs associated with this action, as authorized by 18 U.S.C. § 1964(c).

286.   Plaintiff has sustained actual damages, and Defendants acted with gross fraud, wantonness, maliciousness, and/or the willful disregard of the rights of others, such that Plaintiff and the Class are entitled to punitive damages.

287.   Plaintiff also is entitled to recover his reasonable attorney's fees and costs of litigation.

## **Count II**

### Georgia Racketeer Influenced and Corrupt Organizations Act (RICO Class Claim) (Against All Defendants)

288.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

289.   This Count sets forth claims by Plaintiff and other members of the Class against all Defendants for damages resulting from Defendants' violations of Georgia RICO.

290.   Plaintiff is an aggrieved person with standing to sue within the meaning of Georgia RICO, O.C.G.A. § 16-14-6(b).

291.   Plaintiff is a person who was injured by reason of violations of O.C.G.A. § 16-14-4, and therefore, Plaintiff has standing to sue pursuant to the Georgia RICO, O.C.G.A. § 16-14-6(c).

292.   Each Defendant is a legal entity, and therefore an enterprise, within the meaning of O.C.G.A. § 16-14-3(3).

293.   The RICO Enterprise is an association-in-fact enterprise with the common purpose of recruiting, contracting, transporting, and employing Mexican TN visa holders to work at Hyundai's business operations in West Point, Georgia. O.C.G.A. § 16-14-3(6).

294.   The RICO Enterprise engaged in and affected instate commerce.

295.   The RICO Enterprise functions as continuing units.

296.   The RICO Defendants acquired and/or maintained control of real and personal property, including land, buildings, motor vehicles, and property and money associated with the RICO Defendants' recruiting, staffing, and manufacturing operations, through a pattern of numerous acts of racketeering activity in violation of O.C.G.A. § 16-14-4(a), related by their common purpose.

297.   The RICO Defendants were employed by or associated with the RICO Enterprise and conducted or participated in the RICO Enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b) and 16-14-4(c), related by their common purpose of recruiting foreign workers to secure TN visas for them to work as manual laborers on Defendant Hyundai's production line.

298.   Specifically, the predicate acts of racketeering activity by which the RICO Defendants committed the Georgia RICO Violations set forth in the preceding paragraphs, are the following:

a.  Mail fraud in violation of 18 U.S.C. § 1341;

b.  Wire fraud in violation of 18 U.S.C. § 1343;

c.  Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

d.  Visa fraud in violation of 18 U.S.C. § 1546; and

e.  False Statements and Writing in violation of O.C.G.A. § 16-10-20.

*Predicate Acts*

Conduct Defined as "Racketeering" in the Federal RICO

299.   As set forth in the preceding paragraphs, the RICO Defendants, through the RICO Enterprise, committed mail and wire fraud, in violation of

18 U.S.C. §§ 1341 and 1343; fraud in foreign labor contracting, in violation of

18 U.S.C. §§ 1351; and visa fraud in violation of 18 U.S.C. and § 1546.

False Statements and Writings: O.C.G.A. § 16-10-20

300.   As set forth in the preceding paragraphs, the RICO Defendants,

through the RICO Enterprise, did or conspired to knowingly and willfully

falsify material facts and make false, fictitious, or fraudulent statements or

representations regarding the wages Plaintiff would receive, and the work

Plaintiff would perform as detailed in the Support Letters provided to

Plaintiff.

301.   These knowing and willful acts constituted false statements in

violation of O.C.G.A. § 16-10-20. Plaintiff and Class members relied on the

fraudulent statements by Defendants to their detriment and would not have

submitted the TN visa applications, accepted employment, and traveled to

the United States for such employment but for Defendants' fraud.

*Pattern of Related Racketeering Acts*

302.   The RICO Defendants engaged in the racketeering activity described in this lawsuit repeatedly, starting as early as January 2020, and continuing through the present.

303.   The RICO Defendants, through the RICO Enterprise, rely on the racketeering acts described in this Complaint to conduct their regular business activities.

304.   The RICO Defendants' racketeering acts have had similar purposes: to profit from fraudulent recruitment of Plaintiff and other foreign workers, and profit from cheap labor.

305.   Each of the RICO Defendants' acts yielded similar results and caused similar injuries to Plaintiff, as outlined below.

306.   As set forth herein, Defendants conspired to violate RICO, by agreeing to participate in the objectives of the Enterprise to engage in the pattern of racketeering activity.

307.   As set forth herein, each of the Defendants agreed to commit two predicate acts, including, but not limited to:

      a.   SMART directed AGWM to post job offers for employment at SMART that contained fraudulent misrepresentations which Plaintiff and others relied upon;

b.  AGWM agreed to post job offers for employment at SMART that contained fraudulent misrepresentations which Plaintiff and others relied upon;

c.  SMART and AGWM interviewed Plaintiff and others using wires and made fraudulent misrepresentations to them for the purpose of enticing them to apply for employment at SMART which did not exist and ultimately to perform jobs which were not eligible for TN visas;

d.  SMART and AGWM directed WK Law and Woon Kim to make fraudulent misrepresentations to applicants in order to facilitate their application and acceptance of employment with SMART;

e.  AGWM and WK Law and Woon Kim agreed to make fraudulent misrepresentations to applicants in order to facilitate their application and acceptance of employment with SMART;

f.  SMART prepared and submitted through AGWM and WK Law and Woon Kim fraudulent Support Letters which falsely certified the nature of the jobs being offered to Plaintiff and others at SMART;

g.  SMART, AGWM, WK Law, and Woon Kim submitted the fraudulent Support Letters to the U.S. Government for the

purpose of defrauding the U.S. Government and inducing it to issue TN visas to Plaintiff and others for jobs that did not qualify for the TN visa program.

### *Injury and Remedies*

308.  As a direct and proximate result of the Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiff and Class members have suffered injuries to their property, including but not limited to visa processing fees, unreimbursed travel expenses, incidental relocation expenses, wage underpayments, lost employment opportunities, and/or other pecuniary losses.

309.  Plaintiff and other Class members are entitled to an award of damages in an amount to be determined at trial, including but not limited to:

a.  Compensation for injuries to their property, including expenses for travel to U.S. Consulates for interviews, visa processing fees, expenses for travel to the United States and to purchase furniture and other living necessities, and lost economic opportunities to perform other work;

b.  Punitive damages;

c.  Trebling of the damages set forth in subparagraph (a) and (b) *supra*; and

d.  Attorney's fees and costs and expert's fees and costs associated
with this action as authorized by O.C.G.A. § 16-14-6(c).

## Count III

Employment Discrimination in Violation of 42 U.S.C. § 1981
(Contract and Discrimination Class Claim)
(Against Defendant SMART)

310.  Plaintiff realleges and incorporates by reference the foregoing
allegations as if set forth fully here.

311.  This Count sets forth claims by Plaintiff and other members of
the Class against Defendant SMART for damages resulting from violations of
42 U.S.C. § 1981 ("Section 1981").

312.  Plaintiff and all members of the Class are Hispanic or Latino and
of Hispanic or Latino ancestry.

313.  Plaintiff and all members of the Class are citizens of Mexico and
not citizens of the United States.

314.  The actions of SMART, as set forth herein, violated Plaintiff's
and other Class members' rights to receive full and equal benefit of all laws
as guaranteed by Section 1981, including Plaintiff's and other Class
Members' rights to enjoy and benefit from non-discriminatory employment
relationships with SMART.

315.  As set forth herein, SMART and Plaintiff and Class members were parties to employment contracts in which SMART imposed discriminatory terms and conditions of employment on Plaintiff and other Class members—specifically paying lower hourly wages and requiring longer work hours—to which U.S. citizen employees were not similarly subjected.

316.  Plaintiff and other Class members were qualified for engineer positions and hired for engineer positions at the SMART plant, including but not limited to the positions of Quality Control Engineer, Industrial Quality Engineer, Quality Engineer. Although qualified and hired for the engineer positions, Plaintiff and Class members were denied the positions when they arrived to the U.S.  This denial of the engineer positions was based solely on their race, national origin, and non-U.S. citizenship.  In contrast, U.S. citizen employees who were qualified for and hired for engineering positions were placed in engineering positions.  The denial of the engineering positions to Plaintiff and Class members resulted in substantially lower wages and poorer work conditions for Plaintiff and Class members.

317.  SMART knowingly, willfully, maliciously, intentionally, and without justification acted to deprive Plaintiff and other Class members of their rights on the basis of their race, non-white Hispanic or Latino, and Mexican non-U.S. citizenship and based on their alienage by paying lower

hourly wages and requiring longer work hours to which U.S. citizen employees were not similarly subjected.

318.   Defendants undertook their discriminatory conduct intentionally and maliciously with respect to Plaintiff and Class members and their federally protected rights, or additionally, and in the alternative, undertook their discriminatory conduct recklessly with respect to Plaintiff and the Class members and their federally protected rights, entitling them to recover punitive damages against Defendants.

319.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff and the Class members have suffered lost compensation and other benefits of employment, pain and suffering in the form of emotional distress, inconvenience, humiliation, and other indignities.

320.   Plaintiff and Class members are entitled to damages, including back pay and lost benefits, promotion or a higher rate of pay, compensatory damages, punitive damages, attorney's fees, experts fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## **Count IV**

### Employment Discrimination in Violation of Title VII
#### (Contract and Discrimination Class Claim)
#### (Against Defendant SMART)

321.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

322.   This Count sets forth claims by Plaintiff and other members of the Class against Defendant SMART for damages resulting from SMART's violations of § 702(a) of Title VII, 42 U.S.C. § 2000e-2(a) ("Title VII").

323.   For the entire term of their employment, SMART subjected Plaintiff and other members of the Class to terms and conditions of employment that were less favorable than those enjoyed by their counterparts who were not Hispanic and/or of Mexican national origin.

324.   This unequal treatment included but was not limited to lower wages and longer work hours.

325.   The unlawful employment practices complained of in the preceding paragraphs were intentional and done with malice or with reckless indifference to the federally protected rights of Plaintiff and other Class members.

326.   Plaintiff and Class members are members of protected classes in that they are non-white Hispanic or Latino and are Mexican national origin.

327.   Plaintiff and Class members were subjected to disparate treatment discrimination on the basis of their race—non-white Hispanic or

Latino—and their national origin—Mexican—including, but not limited to, being paid less for performing the same work as employees of Defendants who were U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic, and being forced to work overtime and more hours per week than those employees.

328.   Plaintiff and other Class members were qualified for engineer positions and hired for engineer positions at the SMART plant, including but not limited to the positions of Quality Control Engineer, Industrial Quality Engineer, Quality Engineer. Although qualified and hired for the engineer positions, Plaintiff and Class members were denied the positions when they arrived to the U.S.  This denial of the engineer positions was based solely on their race, national origin, and non-U.S. citizenship.  In contrast, U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic, who were qualified for and hired for engineering positions were placed in engineering positions.  The denial of the engineering positions to Plaintiff and Class members resulted in substantially lower wages and poorer work conditions for Plaintiff and Class members.

329.   The above-pled discriminatory conduct toward Plaintiff and Class members constitutes race and/or national origin discrimination against them in violation of Title VII, 42 U.S.C. § 2000e et seq.

330.   The effect of these intentional practices has been to deprive Plaintiff and other Class members of equal employment opportunities and otherwise adversely affect their status as employees because of their race, color, and/or national origin.

331.   Plaintiff and other Class members seek all appropriate relief in an amount to be determined at trial, including, but not limited to:

    a.   compensatory damages for the deprivation of Plaintiff's and other Class members' rights as set forth in this Count;

    b.   punitive damages for SMART's malicious and reckless discriminatory conduct; and

    c.   attorneys' and experts' fees and costs of this action.

## Count V

### Fair Labor Standards Act Violations
### (Collective Action Claim)
### (Against Defendant SMART)

332.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

333.   This count sets forth a claim by Plaintiff, and by all similarly situated workers who opt into this action pursuant to 29 U.S.C. § 216(b), for damages resulting from Defendant SMART's violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.

334.   Plaintiff and other TN visa holders regularly—and including in their first two months of employment—worked more than 40 hours in a single work week.

335.   During their first two months of employment, SMART willfully failed to pay Plaintiff and the other TN visa holders an overtime premium of one half of their regular rate of pay for every hour they worked above 40 in a work week.

336.   Otherwise during their employment, SMART willfully failed to pay Plaintiff and the other TN visa holders an overtime premium correctly calculated to take account of the housing benefit provided.

337.   SMART's failure to pay correct overtime premium for hours above 40 in a work week violated the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

338.   Plaintiff and the other TN visa holders are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

339.   Plaintiff and the other TN visa holders are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

340.   Plaintiff and the other TN visa holders also seek, and are entitled to, the attorneys' fees and expenses incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

### Count VI

Breach of Contract
(Contract and Discrimination Class Claim Class Claim)
(Against Defendant SMART)

341.   The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

342.   This Count sets forth claims by Plaintiff and other members of the Class against Defendant SMART for damages resulting from SMART's breaches of contract.

343.   In their support letters, Defendant SMART made written offers of employment to Plaintiff and the Class Members which contained material terms of their employment, including that these jobs would be highly skilled engineer positions paying a certain rate of pay which would be eligible for the TN visa.

344.   Plaintiff and the Class Members accepted the material terms of such employment offered by Defendant SMART and forbore other opportunities of employment and undertook certain expenses in exchange for that employment as offered.

345.   Defendant SMART did not provide employment to Plaintiff and the Class Members as offered, but rather, provided manual labor jobs on its production line which were not eligible for TN visas.

346.   Defendant SMART thus breached its contracts with Plaintiff and the Class Members.

347.   As a result, Plaintiff incurred incidental and consequential damages which they are entitled to recover at law, including but not limited to visa processing fees, unreimbursed travel expenses, relocation expenses, wage underpayments, and lost employment opportunities.

348.   Also, Plaintiff is entitled to recover nominal damages for Defendant SMART's breach of these contracts.

### Count VII

<u>Malpractice</u>
<u>(Individual Claim by Plaintiff)</u>
<u>(Against Defendants Woon Kim and WK Law)</u>

349.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

350.   This count sets forth a claim by Plaintiff individually for damages resulting from Defendant Woon Kim's and Defendant WK Law's malpractice.

351.   An attorney-client relationship existed between WK Law principal Woon Kim and Plaintiff.

352.   WK Law principal Woon Kim failed to provide ordinary care, skill, and diligence in his representation of Plaintiff, including but not limited to, accepting payment from another for legal representation when there was an interference with Attorney Kim's independence of professional judgment or with the client-lawyer relationship; violating his fiduciary duty to his client and failing to advise him candidly about the legality of his course of conduct; making false statements to third parties, and misconduct involving dishonesty, fraud, deceit, or misrepresentation.

353.   Plaintiff suffered damages caused and proximately caused by WK Law principal Woon Kim's failure to provide ordinary care, skill, and diligence in his representation of Plaintiff.

354.   Woon Kim and WK Law's misconduct was intentional, malicious, or fraudulent.

355.   Woon Kim and WK Law's misconduct rose to the level of bad faith in dealing with Plaintiff.

356.   Plaintiff seeks all appropriate relief in an amount to be determined at trial, including, but not limited to:

     a.   compensatory damages for the deprivation of Plaintiff's rights as set forth in this Count;

     b.   punitive damages; and

    c.  attorneys' and experts' fees and costs of this action.

## **Demand for Trial by Jury**

357.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this Class Action Complaint.

## **Request for Relief**

WHEREFORE, Plaintiff requests that this Court enter an Order:

a.    assuming jurisdiction over this action;

b.    certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representatives, and appointing Plaintiff's attorneys as Class Counsel;

c.    declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiff to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible TN visa holders who choose to do so to opt into this action;

d.    declaring that Defendants violated the RICO;

e.    declaring that Defendant SMART violated Section 1981, Title VII, and the FLSA;

f.   declaring that WK Law committed legal malpractice with respect to Plaintiff;

g.   permanently enjoining Defendants from further violations of the RICO;

h.   permanently enjoining Defendant SMART from further violations of Section 1981, Title VII, and the FLSA;

i.   granting judgment to Plaintiff and other Class members, and against all Defendants, on Plaintiff's and other Class members' RICO claims and awarding them the trebled amount of their pecuniary losses;

j.   granting judgment to Plaintiff and other Class members, and against Defendant SMART, on Plaintiff's and other Class members' claims pursuant to Section 1981 and awarding compensatory and punitive damages;

k.   granting judgment to Plaintiff and other Class members, and against Defendant SMART, on Plaintiff's and other Class member's claims pursuant to Title VII and awarding compensatory and punitive damages;

l.   granting judgment to Plaintiff and other Class members, and against Defendant SMART, on Plaintiff's and other Class

member's claims contract claims and awarding consequential, incidental, and nominal damages;

m.   granting judgment to Plaintiff and other similarly situated TN visa holders who opt in pursuant to 29 U.S.C. § 216(b) on their FLSA claims, and against Defendant SMART, and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

n.   granting judgment to Plaintiff and against Defendants Woon Kim and WK Law for malpractice, and awarding Plaintiff compensatory and punitive damages;

o.   Awarding Plaintiff and other Class members prejudgment and postjudgment interest as allowed by law;

p.   Awarding Plaintiff and other Class members their costs and reasonable attorneys' fees; and

q.   Granting such further relief as the Court finds just.

Respectfully submitted this day: April 7, 2023.

Daniel Werner
Georgia Bar No. 422070
dan@decaturlegal.com
James Radford
Georgia Bar No. 108007
james@decaturlegal.com

RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300

*/s/ Christopher B. Hall*
Christopher B. Hall
Georgia Bar No. 318380
chall@hallandlampros.com
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@hallandlampros.com
Brian J. Sutherland
Georgia Bar No. 105408
brian@hallandlampros.com

HALL & LAMPROS, LLP
300 Galleria Parkway, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE AND FONT</u>

This is to certify that on April 7, 2023, I prepared the foregoing in Book Antiqua, 13-point type in accordance with L.R. 5.1(C) and that I electronically filed the document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.  I also mailed a copy of the complaint to: AGWM United, LLC c/o Mr. Julian Kim 4405 Village Field Place Suwanee, GA 30024, and to AGWM United, LLC, c/o Registered Agent Julian Kim, 4092 Columns Dr. SE, Marietta, GA 30067-5199.

*/s/ Christopher B. Hall*
Christopher B. Hall
Attorney for Plaintiff